JOSEPH KATZ *vs.* SAMUEL RICHMAN ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 16th, 1931—decided January 19th, 1932.

*Josiah H. Peck* and *Louis H. Katz,* with whom, on the brief, was *I. Oscar Levine,* for the appellant (plaintiff).

*John T. Robinson* and *Reuben Sudarsky,* for the appellees (defendants).

AVERY, J. The plaintiff has set up eighty-two reasons of appeal, of which fifty-seven deal with claimed corrections of the finding, thirteen claimed errors in the court's judgment as rendered, and twelve rulings on

evidence in the course of the trial. By reason of the great number of errors assigned, the facts set forth in the finding are numerous and too complicated to be condensed into a statement briefer than that contained in the finding itself. Without attempting, therefore, a full statement, the facts may be summarized as follows:

The action was brought by the holder of a mortgage note against Samuel Richman and David Handler, the makers, and against Ida Richman, Celia Handler and The Richman and Handler Company, to whom the plaintiff claims property was conveyed fraudulently by the makers. July 14th, 1923, Samuel Richman and David Handler purchased from the plaintiff and one Samuel Bergman premises on the corner of West Suffield and Main Streets in Hartford (referred to in this case as the "Suffield Street property"), paying therefor the sum of $63,000 as follows: By cash, $7000, by assuming a first mortgage of $25,000, by assuming a second mortgage for the unpaid balance of $12,750, and by executing their two joint and several promissory notes, each for $9125, one payable to the order of the plaintiff, and the other to the order of Samuel Bergman. To secure these notes, they executed a third mortgage on the premises. October 1st, 1923, the plaintiff and Bergman transferred their notes and assigned the mortgage to the Hartford National Bank and Trust Company. May 10th, 1930, the bank transferred one note back to the plaintiff, and transferred the other to the plaintiff's son, Milton Katz, and executed an assignment of the mortgage to the plaintiff and his son.

January 30th, 1924, Richman and Handler purchased another piece of property on the corner of Main and Capen Streets in Hartford (referred to in this case as the "Capen Street property"). The building on the

premises was used as a residence for the two families, and Richman and Handler also set up a gasoline and automobile accessory business on part of the premises. This business was conducted by them as partners from 1924 until May, 1929. May 15th, 1929, a corporation, The Richman and Handler Company, was formed. The Capen Street property and the business conducted therein was transferred to this corporation by them. May 31st, 1929, the organization of this corporation was completed, and Richman and Handler each received one hundred and eighty-two shares of stock; their wives each received one share. June 10th, 1929, Richman, for a valuable consideration, transferred one hundred and seventy-five shares of his stock to his wife, Ida; and Handler transferred one hundred and seventy-five shares of his stock to his wife, Celia. This was done in accordance with a prior understanding between the parties as compensation for the real and personal property turned over to the corporation.

The Suffield Street property was not conveyed to the corporation. After the incorporation, Richman and Handler, individually, continued to pay the bills on that property. They made permanent improvements and repairs thereon, and continued to pay the principal and interest on the mortgage on the premises. They even paid some bills against the property after this action was instituted. By the terms of the plaintiff's note, no part of the principal was to be paid until six months after the second mortgage for the unpaid balance of $12,750 was fully paid. The final payment on the second mortgage, together with interest in the sum of $1030, was made on September 18th, 1929; and March 18th, 1930, an instalment of principal and interest, amounting to over $1700, on the mortgage held by the plaintiff and his son, became due. Richman and Handler were not able to meet this payment. May

12th, 1930, the plaintiff brought this action, demanding the full amount of the note in the sum of $9125, and the plaintiff's son brought a similar action on the other note for the same amount. The claim of the plaintiff in this action is that the transfer of property on May 31st, 1929, from Richman and Handler to The Richman and Handler Company, and the transfer of the shares of stock on June 10th, 1929, to their wives, were made without consideration, and with intention to hinder, delay and defraud the plaintiff, and were fraudulent and void as against him.

The trial court found that at the time of the incorporation and transfer of shares of stock, all business debts of Richman and Handler were meticulously provided for; that at that time, they owed no other debts, except their mortgage debts; and that these were reasonably well secured. The court found that the value of the Suffield Street property, at that time, was ample to secure the mortgage then held by the plaintiff and his son; that Richman and Handler were not rendered insolvent by the transfer; that in making the transfers, there was no intention on the part of the grantors or grantees to hinder, delay or defraud the plaintiff; and that the transfers were made upon valuable consideration; and rendered judgment for the plaintiff as against the defendants Richman and Handler only in so far as the issues related to their indebtedness as makers of the note set up in the complaint, but in all other respects, the issues were found in their favor. The issues were also found in favor of all the other defendants.

From the finding, it appears that when the Capen Street property was bought, Richman's half of the purchase price was furnished entirely by his wife, and none of his money went into the purchase of the building; that the amount furnished by Handler came from

the joint earnings of Handler and his wife who had turned over her earnings to him for a period of fourteen years, and he had deposited them in his own name for their joint benefit. He had never paid back to her any part of the funds. It was distinctly understood among all four of the parties, when the property was purchased, that it should belong to the two wives, and that both families should live there.

The plaintiff, in his appeal, seeks to add to and subtract from the finding, and practically to substitute his own draft-finding for that of the court's. An examination of the evidence, however, discloses that the plaintiff is entitled to no correction which would advantage his position. The evidence fully supports the trial court's finding that the consideration for the purchase of the Capen Street property was largely furnished by the wives of these parties, from their own actual earnings, and was not made as a gift to their husbands. A vital point in the case from the plaintiff's point of view is whether or not Richman and Handler were rendered insolvent by the transfers of the Capen Street property to the corporation in 1929, and the transfers of the shares of stock from the corporation to their wives. On this point, there is evidence sufficient to support the finding of the trial court that, on that date, the Suffield Street property was worth $50,000, and could have been readily sold for that amount. On this basis, there was considerable equity over and above the mortgages then remaining on the property, and the plaintiff's note was secured by what had become a second mortgage. The facts found fully support the conclusion of the court that, at the time the transfer of the Capen Street property was made to the corporation and the stock thereof transferred to the wives of the defendants, there was no intention on the part of the grantors or grantees to hinder, delay or defraud the plaintiff.

This disposes of any question of actual fraud in the case.

The transfers were in satisfaction of valid pre-existing debts and hence were for a valuable consideration. *Clarke* v. *Black*, 78 Conn. 467, 473, 62 Atl. 757. Even if they were to be considered as voluntary, they could not be held to be fraudulent on this finding. In *State* v. *Martin*, 77 Conn. 142, 144, 58 Atl. 745, we said: "Whether [a] voluntary conveyance [is] constructively fraudulent as to existing creditors, depends upon the financial condition of the husband at the time [the conveyance] was made. A voluntary conveyance made in good faith, by a grantor not indebted, or if so, by one who retains sufficient property to pay his debts, is valid as against creditors. *Benton* v. *Jones*, 8 Conn. 186; *Darcy* v. *Ryan*, 44 Conn. 518; *Gilligan* v. *Lord*, 51 Conn. 562, 566. If in such case the debtor is left solvent after such conveyance, creditors cannot complain, and 'the question of solvency is to be determined as of the time of the conveyance. If at that time the rights of creditors are not defeated, the happening of disaster afterwards, not contemplated at the time of the conveyance, does not affect its validity.' *Wilbur* v. *Nichols*, 61 Vt. 432, 436 [18 Atl. 54]."

With regard to the rulings in the exclusion of evidence, the finding is defective in that the paragraphs containing the rulings for the most part state several, so that it is impossible to tell the real ground of complaint. "The rules of court require . . . that when error is claimed in the rulings upon evidence, there shall be a finding which states in each instance the question, the objection, the exception, and the answer, if any." *Leahy* v. *Cheney*, 90 Conn. 611, 617, 98 Atl. 132. Furthermore, there are no assignments of error as required by the rules of court. Notwithstanding the defective manner in which the rulings are presented,

we have examined them and are unable to see that they are wrong; or, if so, that they are sufficiently material to have affected the disposition of the case.

Among the rulings of the court complained of, it appears that, during the course of the trial, the plaintiff moved for permission to inspect the books of the corporation. This motion was denied by the court. Doubtless, the court has inherent power to direct such an inspection. In *Banks* v. *Connecticut Ry. & Lighting Co.*, 79 Conn. 116, 119, 64 Atl. 14, we held "that a court may upon a trial of a cause, upon the motion of one of the parties, order his adversary or the latter's counsel to produce to the court, for such purpose in the progress of the trial as it may authorize, any document claimed to be relevant which is then in court and in the possession of the person to whom the order is addressed." The granting or denial of such a motion rests in the sound discretion of the court. *Finlay* v. *Chapman*, 119 N. Y. 404, 408, 23 N. E. 740. Two things in the present instance justified the court in exercising its discretion to deny the motion: first, it amounted to a mere fishing expedition on the part of the plaintiff; *Equitable Life Assurance Society* v. *Clark*, 80 Miss. 471, 477, 31 So. 964; and second, and more important, to permit the inspection of the books as claimed by the plaintiff at the trial would almost inevitably have led to a prolongation of it, if not a postponement, with great inconvenience and expense to the parties concerned. "Such a practice would in many instances be inconvenient, dilatory and expensive, with nothing to justify it, leading to postponements to allow time for inspection and calculated to . . . defeat the due administration of justice." *Bloede Co.* v. *Bancroft & Sons Co.*, 98 Fed. 175, 185.

There is no error.

In this opinion the other judges concurred.