WILLIAM F. HURLEY *vs.* THE CONNECTICUT COMPANY.

MALTBIE, C. J., HAINES, HINMAN, BANKS AND AVERY, Js.

Argued January 3d—decided April 3d, 1934.

*Edwin H. Hall,* with whom, on the brief, was *Walter A. Mulvihill,* for the appellant (defendant).

*George J. Grady,* with whom was *Edward L. Reynolds,* for the appellee (plaintiff).

HAINES, J.   The plaintiff was struck by the defendant's trolley car on the evening of January 6th, 1932, about eleven-thirty, near the intersection of Portsea and Christopher Streets in the city of New Haven. He alleged that he was proceeding from the railroad station to his home, walking westerly on the north sidewalk of Portsea Street until he reach Christopher Street, which intersects Portsea Street from the north but does not cross it; that there was a heavy fog; that it was raining very hard and a strong wind was blowing from the south; that he decided to turn south on the crosswalk across Portsea Street to the shelter of the buildings on the south side of that street, and while thus crossing with due care, was struck by a trolley car of the defendant which was moving west on Portsea Street and approaching Christopher Street. He further alleged that the motorman was negligent in several respects.   The defendant admitted that the plaintiff was injured by its trolley car but claimed that he was struck at a point one hundred and fifty to one hundred and seventy-five feet west of Christopher Street; that he was lying on the rails in an intoxicated condition and was first seen by the motorman about ten feet away and too late to enable him to stop his car.   The trial resulted in a verdict for the plaintiff, which the defendant moved to set aside as excessive

and against the law and the evidence. The trial court overruled the motion and this is one of the assigned errors.

The finding shows the plaintiff's evidence to have been, in substance, that the trolley rails were in the approximate center of Portsea Street, the width of that street being twenty-three feet ten inches from curb to curb. A large van or truck, eight to ten feet in width, was parked within a foot of the north curb of Portsea Street and ten to fifteen feet from the east curb of Christopher Street, and back of it stood two automobiles one behind the other. The trolley car in question was a one-man car operated by and in charge of a motorman.

The plaintiff offered evidence that as he reached the corner and decided to cross, he looked to the east and saw no traffic and then moved about five or six feet onto the crosswalk into Portsea Street, and was within less than three steps of the trolley rail, when, again looking to the east, he could see about twenty-five feet along the tracks, but neither heard nor saw any approaching traffic. Looking again to the west to observe the headlights of an approaching automobile, he decided he had ample time to cross. Then looking again to the east, he saw the approaching trolley car for the first time, and about five to ten feet away. He was then midway between the rails and though he tried to avoid it, he was struck by the front end of the car and dragged a considerable distance and pinned under the car. He offered evidence that the motorman failed to sound any bell or give other warning of his approach to the crosswalk; that at the moment before the collision the motorman was not looking in the direction the car was moving but was turned to the north extracting coins from the coin box; that the speed of the car was not slackened; that the mo-

torman did not use his brake or reverse lever, and that he failed to drop the fender before striking the plaintiff.

The defendant's evidence, as already indicated, was that the accident occurred in the next block, and that the plaintiff was not on a crosswalk but lying on the rails intoxicated, ten feet ahead of the car when the motorman first saw him; that the car was then moving twelve miles an hour and the motorman made an emergency stop but that the car traveled about twenty-five feet before stopping.

Of the fifteen assignments of error, one which is strongly urged by the defendant is with respect to that part of the charge dealing with contributory negligence. The defendant contended that the plaintiff was lying prone upon the rails in an intoxicated condition when he was struck by the car and that it was entitled to have the jury instructed that if they found in accordance with that claim of fact, the plaintiff was guilty of contributory negligence as matter of law. However, the court charged the jury as follows: "In connection with the claim of the defendant in so far as it relates to the claimed presence of the plaintiff upon the tracks in a prone position, I will charge you that if you find that the plaintiff was, in fact, lying across the tracks before he was struck by the defendant's car under the circumstances and conditions as claimed by the defendant, and that such position was due to an act of the plaintiff's own volition, his conduct in thus acting might well be found to have been negligent, and so long as he remained in such position under such circumstances, it might also be found that he continued to be negligent in the passive sense, in that he did not awake to his surroundings and do what he could do to avoid the threatened consequences of a situation which

he had negligently brought about. Under these circumstances, then, the plaintiff would not be entitled to recover for injuries received while he was thus occupying a position he had negligently assumed, except by showing that his continuing passive negligence was not the proximate cause of his injury, and by showing that the supervening negligence of the defendant motorman in failing to use ordinary care to avoid injuring him, after the motorman had knowledge, actual or imputed, of his peril, and that he apparently could not or would not attempt to save himself." A little later in the charge, the subject was thus referred to: "You will also consider this claim of the defendant in connection with its claim that the conduct of the plaintiff in lying upon the tracks constituted contributory negligence on his part, and if you find that the plaintiff was in fact lying upon the tracks, you will then determine whether such conduct under the circumstances as you find to have existed, was that of a reasonably prudent man."

The plaintiff denied that he was lying on the tracks at any time before the accident and made no claim of supervening negligence. If the jury had found he was lying prone upon the tracks before he was struck, there was no evidence as to how he got there, and the jury would have had no other course open to them but to find that he was there of his own volition. The jury should have been instructed, therefore, that if they found the facts in accordance with the defendant's claim, there being no explanation as to how the plaintiff came there, then he was guilty of negligence as matter of law, and that he could not recover unless he established that there was supervening negligence on the part of the motorman, or that his own negligent action was not the proximate cause of the injury, neither of which claims was made in this instance.

*Carlson* v. *Connecticut Co.,* 95 Conn. 724, 727, 112 Atl. 646.

In the case cited we pointed out that the plaintiff's testimony afforded no explanation of his negligent conduct in lying down beside the track, with legs over the rail, except his own admission that he was more or less under the influence of the liquor he had taken, and added: "From a legal standpoint it is of no consequence whether he was drunk or sober. The important fact is that he went to sleep in that position of danger and that his negligence in so doing is not explained away by any testimony. That being so, the trial court erred in failing to instruct the jury that the plaintiff was negligent in lying down on the track, and that so long as he remained there he continued to be negligent, in the passive sense."

The court in the present case was in error in leaving it to the jury to determine whether the plaintiff was negligent, if he was lying upon the tracks as the defendant claimed.

Since this necessarily requires a new trial, we refer only to two other assignments involving important rulings on evidence, since those questions are likely to be presented on a second trial of the case.

Certain printed rules and regulations of the company touching the conduct of its motormen, which were in operation before and at the time of the accident, were admitted in evidence over the defendant's objection. It is claimed that the jury were allowed to measure the conduct of the motorman as to negligence, by these rules rather than by the law of the State. We do not so understand the record. The jury were correctly instructed that the conduct of the motorman must be measured by that of a reasonably prudent motorman under the same circumstances, and this is the standard imposed by law. A minority

of decisions hold such rules and regulations to be inadmissible, but by far the greater majority sustain their admissibility when relevant to the inquiry. The following cases, among others, are cited as sustaining the latter position: *Stevens* v. *Boston Elevated Ry Co.*, 184 Mass. 476, 478, 69 N. E. 338; *Bilodeau* v. *Fitchburg & Leominster St. Ry. Co.*, 236 Mass. 526, 539, 128 N. E. 172; *Georgia Railroad* v. *Williams*, 74 Ga. 723, 734; *Lake Shore & M. S. Ry. Co.* v. *Ward*, 135 Ill. 511, 518, 26 N. E. 520; *Cincinnati St. Ry. Co.* v. *Altemeier*, 60 Ohio St. 10, 53 N. E. 300; *Sullivan* v. *Richmond L. & R. Co.*, 112 N. Y. Sup. 648; *Delaware, L. & W. R. Co.* v. *Ashley*, 67 Fed. 209, 212.

Without adopting in its entirety the reasoning in some of these decisions, we hold that the requirements imposed by the company upon its motormen serve at least to show what the former considers necessary or desirable for the protection of the public, and whether the motorman observed or violated these rules is certainly some evidence as to whether his conduct was that of a reasonably prudent motorman under the circumstances. Thus it is said that "the regulations adopted by an employer for the conduct of . . . a transportation system, may be evidence of his belief as to the standard of care required, and thus of the negligent nature of an act violating those rules." 1 Wigmore, Evidence (2d Ed.) § 282, p. 575.

The second question which we consider is the validity of the exception taken to a ruling upon a report made by the motorman to the company immediately after the accident. This report was brought into court by the defendant in response to a *subpoena duces tecum,* and delivered to the presiding judge, who examined it, and, upon request of counsel for the plaintiff, allowed the latter also to examine it. The report was not put in evidence and did not reach the jury,

but exception was taken to the action of the court in permitting its examination by the plaintiff's counsel. It is well established in this State that this process of *subpoena* is at the service of either party to an action to procure from his adversary the production in court of documents in the latter's possession which are claimed to be relevant upon the trial, and it is within the sound discretion of the court, after its own inspection of the document, to permit or refuse inspection by opposing counsel, and this discretion is not reviewable when properly exercised. *Banks* v. *Connecticut Ry. & Ltg. Co.,* 79 Conn. 116, 119, 64 Atl. 14; *Kane* v. *New Idea Realty Co.,* 104 Conn. 508, 514, 133 Atl. 686; *Katz* v. *Richman,* 114 Conn. 165, 171, 158 Atl. 219. In the exercise of this discretion the paper should not be subjected to the inspection of opposing counsel unless it serves some legitimate purpose, such as refreshing the recollection of the witness, or contradicting his testimony. If the report contains matter not proper for opposing counsel to have and other matter which is relevant and proper, the court may require the party in possession to furnish opposing counsel a copy of the proper portion. It should not be submitted to opposing counsel if the court is satisfied that the latter is merely on a "fishing expedition" to procure evidence. *Katz* v. *Richman, supra,* p. 171; *Spinney* v. *Boston Elevated Ry. Co.,* 188 Mass. 30, 37, 73 N. E. 1021. We do not know the contents of this report since it is not furnished by the record. It does not appear that it was a statement made for the purpose of obtaining legal advice. *Fine* v. *Moomjian,* 114 Conn. 226, 233, 158 Atl. 241. "Where legal advice of any kind is sought from a professional legal adviser in his capacity as such, the communications relating to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure

by himself or by the legal adviser, except the protection be waived." 5 Wigmore, Evidence (2d Ed.) § 2292; *Doyle* v. *Reeves,* 112 Conn. 521, 523, 152 Atl. 882. We assume this report was made for the purpose of preparing against possible future litigation, but that in itself does not bring it within the principle of privileged communications between attorney and client. *Goddard* v. *Gardner,* 28 Conn. 172, 175.

It appears from the record that counsel for the plaintiff demanded possession of this report before any evidence had been offered as to the circumstances of the accident. At that time it could not have refreshed the recollection or affected the credit of any witness, and, moreover, the authority of the motorman to make the report had not been shown, so that in any event the plaintiff was not entitled at that time to its possession.

There is error and a new trial is ordered.

In this opinion the other judges concurred.