CONNECTICUT NATIONAL BANK ET AL. *v.* LOUIS D'ONOFRIO ET AL.
(14201)
(16141)

Dupont, C. J., and Landau and Hennessy, Js.

Argued April 28—officially released August 19, 1997

*Joseph Glass,* for the appellants-appellees (defendants).

*Brian B. Staines,* with whom, on the brief, was *Edward P. Jurkiewicz,* for the appellees-appellants (plaintiffs).

*Opinion*

LANDAU, J. The defendants[1] appeal and the plaintiffs cross appeal from the judgment of the trial court, rendered after a jury trial, awarding damages to the plaintiffs, Connecticut National Bank (CNB) and the trustee in bankruptcy, Richard Coan, and voiding certain fraudulent conveyances by the defendants. On appeal, the defendants argue that the trial court improperly (1) denied their request to charge, (2) denied their motion to set aside the verdict and motion for a directed verdict, and (3) set aside the transfers of personal and real property. On cross appeal, the plaintiffs argue that the trial court improperly denied their motion to set aside the verdict because the verdict form was inconsistent

---

[1] In addition to the named defendant, Janice D'Onofrio, Marshall D'Onofrio and Emma D'Onofrio are also defendants.

with the jury interrogatories. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. In July, 1992, CNB filed a second amended complaint, in which it alleged that it had obtained a judgment against Louis D'Onofrio and Marshall D'Onofrio in the amount of $154,232, inclusive of interest and attorney's fees, as a result of their default on a number of promissory notes. The complaint also alleged that, prior to the judgment being entered, Louis D'Onofrio and Marshall D'Onofrio fraudulently conveyed certain real and personal property to their respective spouses, Janice D'Onofrio and Emma D'Onofrio, without consideration or with the intent of avoiding CNB's debt or in an effort to hinder the collection of a judgment. The complaint further alleged that Janice and Emma, the defendant transferees, knew that Louis and Marshall were indebted to CNB and, by accepting the conveyances knowingly aided, abetted and conspired with their respective husbands to avoid the debt.[2] CNB sought damages, punitive damages, attorney's fees, and that the conveyances be set aside.

In January, 1993, Marshall filed a chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Connecticut. Subsequently, Richard Coan, the appointed trustee, instituted adversary proceedings in the bankruptcy court, pursuant to 11 U.S.C. §§ 544 (b) and 548 (a), against Emma to avoid the transfers of certain property by Marshall to Emma and to recover such property or its value pursuant to 11 U.S.C. § 550 (a). In August, 1994, the bankruptcy court entered an order suspending the adversary proceeding in bankruptcy court and granting Coan relief from bankruptcy

---

[2] The complaint alleged, in addition to the transfers of real property, that both Louis and Marshall fraudulently conveyed certain interests in bank accounts and certificates of deposit to their respective wives between 1990 and 1992.

stay to proceed in the state court. Subsequently, Coan filed a motion to be added as a party plaintiff in this action, which the trial court granted in September, 1994. Coan also filed an amended complaint on August 30, 1994, against Marshall and Emma, to avoid fraudulent transfers and to recover the value of the property. The defendants filed an answer and a special defense that the statute of limitations had run pursuant to General Statutes § 52-552j.[3]

Following a jury trial, the case was submitted to the jury with interrogatories as to Louis and Janice, and Marshall and Emma. The jury returned a verdict of $77,500 in favor of CNB against Louis and Janice and a verdict of $77,500 in favor of Coan against Marshall and Emma. The trial court accepted the plaintiffs' verdicts on November 4, 1994. On November 7, the defendants filed postverdict motions to set aside the verdicts, which the trial court denied. On that same day, the plaintiffs also filed a motion to set aside the verdict, which the trial court denied. The plaintiffs filed a motion for order dated November 15, 1994, requesting that the trial court set aside certain fraudulent conveyances in favor of CNB and Coan. On November 22, 1994, the defendants appealed from the judgment for the plaintiffs, and the plaintiffs subsequently cross appealed from the denial of their motion to set aside the verdict. The trial court granted the plaintiffs' motion for order setting aside the conveyances on December 28, 1994, and the defendants amended their appeal to include this order.

In February, 1996, during oral argument in this court, it came to light that the bankruptcy court had reopened the case against Marshall, and, as a result, we ordered the appeal stayed pending notification that the automatic bankruptcy stay had been lifted. In April, 1996,

---

[3] See footnote 8.

the bankruptcy court, in response to Coan's unopposed motion for relief from stay filed in that court, ordered that the automatic stay pursuant to 11 U.S.C. § 362 (a) was annulled ab initio to permit the appeal to proceed in state court.[4]

Meanwhile, in March, 1996, Coan filed a motion to correct the judgment because the wrong plaintiff, CNB and not Coan, was named in the verdict as to the defendants Marshall and Emma. The trial court, over the defendants' objection, granted the motion to correct on June 24, 1996, and the defendants appealed from that order.[5]

Marshall filed a motion to vacate the relief from stay order dated August 20, 1996, which the Bankruptcy Court denied. On August 30, 1996, the defendants filed

[4] Title 11 of the United States Code § 362 (a) provides in pertinent part: "[A] petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of—

"(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . ."

[5] We will treat this second appeal filed by the defendants, appeal no. 16141, as an amended appeal to appeal no. 14201. Practice Book § 4006 provides in pertinent part that "[s]hould the trial court, subsequent to the filing of the appeal, make a decision which the appellant desires to have reviewed, the appellant shall file an amended appeal form in the trial court within twenty days from the issuance of notice of the decision . . . . Unless the court shall order otherwise, if the appellant has filed a second appeal in the same case, the appeal papers shall be treated as an amended appeal under this rule . . . ."

The defendants only argument in appeal no. 16141, which was not raised in appeal no. 14201, was that the trial court improperly granted Coan's motion to correct because it was without jurisdiction due to Coan's failure to obtain relief from stay under § 362 (a) prior to filing his amended complaint in August, 1994. On April 24, 1996, the Bankruptcy Court, *Shiff, J.*, in response to Coan's motion for relief from stay, issued an order annulling the automatic stay ab initio, thus eliminating any doubt as to the validity of Coan's joinder in this action. As a result, the trial court properly exercised its jurisdiction.

a motion in this court seeking permission to file a motion to vacate the judgment in the trial court, arguing that Coan did not obtain relief from stay from the bankruptcy court prior to filing his complaint against Marshall and Emma in the trial court. This court denied that motion on November 5, 1996.

## I

The defendants first claim that the trial court improperly denied their request to charge. The defendants, relying on *Katz* v. *Richman*, 114 Conn. 165, 170, 158 A. 219 (1932), requested that the jury be charged that if the defendants were not insolvent at the time of the transfers of their respective property, notwithstanding future misfortune, no fraudulent conveyances occurred.[6] The plaintiffs contend that the defendants' rely on language in *Katz* that is taken out of context and therefore inappropriate. We agree with the plaintiffs.

Here, the defendants' requested charge was an inadequate statement of the law and, thus, the trial court was not bound to give such a charge. *State* v. *Manganella*, 113 Conn. 209, 218, 155 A. 74 (1931). In the area of fraudulent conveyances, we have held that " '[t]he party seeking to set aside a conveyance as fraudulent bears the burden of proving either: (1) that the conveyance was made without substantial consideration and rendered the transferor unable to meet his obligations; or (2) that the conveyance was made with a fraudulent intent in which the grantee participated. *Bizzoco* v.

---

[6] The defendants' request to charge stated in pertinent part: "A voluntary conveyance made in good faith, by a grantor not indebted, or if so, by one who retains sufficient property to pay his debts, is valid as against creditors. If in such case the debtor is left solvent after such conveyance, creditors cannot complain, and the question of solvency is to be determined as of the time of the conveyance. If at that time the rights of creditors are not defeated, the happening of disaster afterwards, not contemplated at the time of the conveyance, does not affect its validity. *Katz* v. *Richman*, [supra, 114 Conn. 170]."

*Chinitz*, 193 Conn. 304, 312, 476 A.2d 572 (1984); *Zapolsky* v. *Sacks*, 191 Conn. 194, 200, 464 A.2d 30 (1983). The party seeking to set aside the conveyance need not satisfy both alternatives. *Bizzoco* v. *Chinitz*, [supra, 312].' . . . *Tyers* v. *Coma*, 214 Conn. 8, 11, 570 A.2d 186 (1990); see also *Virginia Corp.* v. *Galanis*, 223 Conn. 436, 443–44 n.10, 613 A.2d 274 (1992)." *Wendell Corp. Trustee* v. *Thurston*, 239 Conn. 109, 115–16, 680 A.2d 1314 (1996); see General Statutes § 52-552f.[7] We conclude that the trial court properly instructed the jury on the law of fraudulent conveyance.

## II

The defendants next argue that the trial court improperly denied their motions to set aside the verdict and for a directed verdict. The defendants contend that the jury verdicts should not have been entered against Janice and Emma because the prior judgment sued upon by the plaintiffs was against only Louis and Marshall. Therefore, the judgments rendered against Janice and Emma should have been set aside as they were not previous judgment debtors on the promissory notes.

Before we can review the defendants' claim, we must first determine whether the defendants properly preserved this claim for appeal. " 'It is an established rule

---

[7] The fraudulent conveyance statute in effect at the time of the disputed transfers was General Statutes (Rev. to 1989) § 52-552. That statute was repealed by Public Acts 1991, No. 91-297, § 13, and we have adopted the Uniform Fraudulent Transfer Act, General Statutes §§ 52-552a through 52-552*l*. Because General Statutes (Rev. to 1989) § 52-552 was in effect at the time the transfers took place, we must review the trial court's jury charge under that statute and apply the substantive law in effect at the time those transfers occurred. *Tyler* v. *Schnabel*, 34 Conn. App. 216, 220–21, 641 A.2d 388 (1994).

Prior to its repeal, General Statutes (Rev. to 1989) § 52-552 provided: "All fraudulent conveyances, suits, judgments, executions or contracts, made or contrived with intent to avoid any debt or duty belonging to others, shall, notwithstanding any pretended consideration therefor, be void as against those persons only, their heirs, executors, administrators or assigns, to whom such debt or duty belongs."

of appellate practice in this state that in order to obtain a full review of claims of error in civil jury cases, parties must raise those errors with the trial court . . . .' " *Barrese* v. *DeFillippo*, 45 Conn. App. 102, 104, 694 A.2d 797 (1997). Here, the defendants made a written motion for a directed verdict at the close of the plaintiffs' case based on their special defense that the plaintiffs' action was barred by the statute of limitations provided for in § 52-552j. The court reserved decision on that motion. Following the court's acceptance of the plaintiffs' verdict, the defendants then filed a motion to set aside the verdict, in which they again relied on their statute of limitations special defense. The trial court denied both motions. In their brief, the defendants argue, for the first time on appeal, that the trial court should have granted their motions for a directed verdict and to set aside the verdict as to Janice and Emma, relying not on their statute of limitations special defense, but rather on the ground that Janice and Emma were improperly named in the judgment. Because the defendants' claim was not properly preserved, we decline to review it. See id., 104.

### III

The defendants next argue that the trial court improperly set aside the transfers of the personal and real property of the defendants after it accepted the verdicts because the applicable statute of limitations had run.

We must first determine which statute of limitations applies to these causes of action. At the time CNB filed its original complaint against the defendants in September, 1990, the applicable statute of limitations for fraudulent conveyance actions brought pursuant to General Statutes (Rev. to 1989) § 52-552 was the three year tort statute of limitations set out in General Statutes § 52-577. See *Travelers Indemnity Co.* v. *Rubin*, 209 Conn. 437, 441, 551 A.2d 1220 (1988). In October,

1991, however, § 52-552 was repealed and replaced by the Uniform Fraudulent Transfer Act (UFTA); General Statutes §§ 52-552a through 52-552*l*; which established three different statutes of limitations, depending on the type of fraudulent transfer.

It is well established that statutes of limitations are presumed to apply retroactively. *Roberts* v. *Caton*, 224 Conn. 483, 488, 619 A.2d 844 (1993). "Although substantive legislation is not generally applied retroactively absent a clearly expressed legislative intent, legislation that affects only matters of procedure is presumed to [be] applicable to all actions, whether pending or not, in the absence of any expressed intention to the contrary. *Lavieri* v. *Ulysses*, 149 Conn. 396, 401, 180 A.2d 632 (1962); *E. M. Loew's Enterprises, Inc.* v. *International Alliance*, 127 Conn. 415, 418, 17 A.2d 525 (1941). Statutes of limitation are generally considered to be procedural, especially where the statute contains only a limitation as to time with respect to a right of action and does not itself create the right of action . . . . *Moore* v. *McNamara*, [201 Conn. 16, 22, 513 A.2d 660 (1986)]; *Jones Destruction, Inc.* v. *Upjohn*, [161 Conn. 191, 195, 286 A.2d 308 (1971)]. Therefore, unless specifically tied to a statutory right of action or unless a contrary legislative intent is expressed, the statute of limitations in effect at the time an action is filed governs the timeliness of the claim. See *Andrulat* v. *Brook Hollow Associates*, [176 Conn. 409, 413, 407 A.2d 1017 (1979)]; *Bohun* v. *Kinasz*, 124 Conn. 543, 547, 200 A. 1015 (1938)." (Internal quotation marks omitted.) *Roberts* v. *Caton*, supra, 488–89.

CNB filed its complaint in September, 1990, at which time the three year tort statute of limitations applied. CNB, however, filed an amended complaint in June, 1992. As a result, we must determine whether CNB's amended complaint relates back to the initial filing or

alleges a new cause of action and, thus, is effective from the date of filing. It is true that a party may properly amplify or expand "what has already been alleged in support of a cause of action, provided the identity of the cause of action remains substantially the same." *Bielaska* v. *Waterford*, 196 Conn. 151, 154, 491 A.2d 1071 (1985). If a new cause of action is alleged in an amended complaint, it will speak as of the date when it is filed. *Keenan* v. *Yale New Haven Hospital*, 167 Conn. 284, 285, 355 A.2d 253 (1974). "A cause of action must arise from a single group of facts. *Gallo* v. *G. Fox & Co.*, 148 Conn. 327, 330, 170 A.2d 724 (1961). A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief. . . . A right of action at law arises from the existence of a primary right in the plaintiff, and in invasion of that right by some delict on the part of the defendant. The facts which establish the existence of that right and that delict constitute the cause of action. . . . *Jonap* v. *Silver*, 1 Conn. App. 550, 556, 474 A.2d 800 (1984), quoting *Saphir* v. *Neustadt*, 177 Conn. 191, 207, 413 A.2d 843 (1979). Where an entirely new and different factual situation is presented, a new and different cause of action is stated. *Gallo* v. *G. Fox & Co.*, supra, 330." (Internal quotation marks omitted.) *Patterson* v. *Szabo Food Service of New York, Inc.*, 14 Conn. App. 178, 182–83, 540 A.2d 99, cert. denied, 208 Conn. 807, 545 A.2d 1104 (1988).

Here, although both CNB's complaint and amended complaint alleged causes of action for fraudulent conveyance, the amended complaint arose out of a different set of facts, i.e., the subsequent conveyances of the personal property, and, therefore, alleged a new cause of action. Because the operative complaint filed in this action was filed in June, 1992, after the enactment of

the UFTA, General Statutes § 52-552a-*l*, the applicable statute of limitations is General Statutes § 52-552j.[8]

The UFTA sets forth three limitation periods in § 52-552j. The first limitation of action of four years applies to transfers made with actual intent under § 52-552e (a) (1). The second statute of limitations of four years contained in § 52-552j (2) applies to transfers made with constructive fraudulent intent under § 52-552e (a) (2). Section 52-552j (3) contains the third and final limitation and provides for a one year statute of limitations for constructive fraudulent conveyances to an insider for an antecedent debt.

In its amended complaint, CNB alleged that the defendants, with the actual intent to hinder its collection efforts, fraudulently conveyed real and personal property to their respective spouses. In addition, the jury specifically found in its interrogatories that Louis and Marshall transferred real and personal property with the intent to hinder, delay or defraud CNB's collection efforts. As a result, the applicable statute of limitations is contained in § 52-552j (1). That section provides that an action must be commenced within four years after the transfer was made or the obligation was incurred.[9] CNB's complaint filed in June, 1992, alleging fraudulent

---

[8] General Statutes § 52-552j provides: "A cause of action with respect to a fraudulent transfer or obligation under sections 52-552a to 52-552*l*, inclusive, is extinguished unless action is brought: (1) Under subdivision (1) of subsection (a) of section 52-552e, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant; (2) under subdivision (2) of subsection (a) of section 52-552e or subsection (a) of section 52-552f, within four years after the transfer was made or the obligation was incurred; or (3) under subsection (b) of section 52-552f, within one year after the transfer was made or the obligation was incurred."

[9] The defendants argue in their brief that the one year insider statute of limitations provided for in General Statutes § 52-552j (3), barred CNB's claims alleged in its June, 1992 complaint, which involved fraudulent transfers of real and personal property alleged to have occurred prior to June,

transfers commencing in March, 1990, was clearly filed within the four year statute of limitation, and, thus, the action was timely filed.

This does not, however, end our analysis concerning this issue. The defendants argue that Coan's complaint filed on August 30, 1994, alleging fraudulent transfers dating back to February, 1990, was barred by the four year statute of limitations provided for in § 52-552j (1). Coan argues, however, that the four year statute of limitations was extended by Marshall's bankruptcy filing in January, 1993, and, in the alternative, that Coan merely acquired the fraudulent conveyance cause of action from CNB, which was stayed during the pendency of the bankruptcy action.

Section 544 (b) of 11 U.S.C. provides in pertinent part that "[t]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by the creditor holding an unsecured claim . . . ." "Section 544 (b) grants the trustee the power to avoid certain transfers of the debtor to the extent that a creditor with an allowable claim might avoid them under applicable state or federal law." *In re Colonial Realty Co.* v. *Marinelli*, 168 B.R. 506, 510 (Bankr. D. Conn. 1994),

1991. The defendants claim that the transfers from Louis to Janice of the real property and a number of the transfers of personal property were made as payment of an antecedent debt.

CNB argues that the issue of whether the transfers were made as payment of an antecedent debt was never raised before the trial court, that the jury made no factual findings as to this issue, and that this argument is inconsistent with the defendants' position throughout the case that the transfers never took place. Our review of the record reveals that the first and only time the defendants argued that the transfers were made to satisfy an antecedent debt was before the trial court during argument on their postverdict motions to set aside the verdict. Because the defendants failed to raise this issue at the appropriate time, that is, before or during trial; see *Santopietro* v. *New Haven*, 239 Conn. 207, 219–20, 682 A.2d 106 (1996); we are precluded from reviewing it on appeal. *Barrese* v. *DeFillippo*, supra, 45 Conn. App. 104.

quoting *In re Graven*, 936 F.2d 378, 383 n.7 (8th Cir. 1991).

On January 8, 1993, Marshall filed a bankruptcy petition seeking relief under chapter 7 of the Bankruptcy Code. This filing invoked an automatic stay pursuant to 11 U.S.C. § 362, which precluded CNB from pursuing its cause of action against Marshall and Emma. On April 5, 1993, Coan filed an adversary proceeding in bankruptcy court seeking to avoid certain transfers made by Marshall to Emma and to recover the property transferred, or its value. On August 22, 1994, the Bankruptcy Court suspended the adversary proceeding and granted Coan relief from the automatic stay to permit him to proceed in state court. The trial court granted Coan's motion to become a party plaintiff and Coan subsequently filed an amended complaint against Marshall and Emma on August 30, 1994.

The practical effect of Coan's becoming a party plaintiff and filing an amended complaint in the state court action was to take the place of CNB in pursuing its fraudulent transfer action against Marshall and Emma. In addition, at the time Coan filed his amended complaint, CNB possessed an allowable claim to avoid the fraudulent transfers under state law. See General Statutes §§ 52-552a through 52-552*l*. Because Coan's amended complaint does not allege a new cause of action, it related back to and is treated as filed at the time of CNB's amended complaint. *Keenan* v. *Yale New Haven Hospital*, supra, 167 Conn. 285. Thus, Coan's amended complaint related back to June, 1992, which was well within the four year statute of limitations.[10]

---

[10] The defendants also argue, in the alternative, that the transfers should be set aside because Coan did not request such relief in his ad damnum. Coan's request for relief states "ordering the defendant to deliver and transfer the above-described property to the plaintiff." As a result, this claim is without merit.

## IV

The defendants finally claim that if we find the issues in favor of the plaintiffs, that the plaintiffs' recovery is limited to the $77,500 jury verdicts against Louis and Janice, and Marshall and Emma, respectively. They argue that the fraudulently transferred real estate is merely an asset that can be attached to satisfy the judgment. Also, the defendants argue that Coan cannot extend any judgment, other than for the benefit of CNB, for the benefit of other creditors. CNB argues that it is entitled to $77,500, in addition to Louise's one-half interest in the real estate he quitclaimed to Janice to satisfy the $77,500, judgment. Coan argues that he is entitled to $77,500, plus the value of Marshall's one-half interest in the real estate he quitclaimed to Emma for the benefit of the bankruptcy estate.

The avoidance of transfers under § 544 (b) is accomplished through the provisions of 11 U.S.C. § 550 (a) of the Bankruptcy Act, which provides in pertinent part that "to the extent that a transfer is avoided under section 544 . . . the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (1) the initial transferee of such transfer . . . ." In *Moore* v. *Bay*, 284 U.S. 4, 5, 52 S. Ct. 3, 76 L. Ed. 133 (1931), the Supreme Court held, applying the statutory precursor to § 550 (a), that "[t]he trustee in bankruptcy gets the title to all property which has been transferred by the bankrupt in fraud of creditors, or which prior to the petition he could by any means have transferred, or which might have been levied upon and sold under judicial process against him . . . . The rights of the trustee by subrogation are to be enforced for the benefit of the estate." See *In re Colonial Realty Co.* v. *Marinelli*, supra, 168 B.R. 511, quoting *Koch Refining* v. *Farmers Union Central Exchange, Inc.*, 831 F.2d 1339, 1348–49 (7th Cir.), cert. denied, 485 U.S. 906, 108 S. Ct. 1077, 99 L. Ed.

2d 237 (1987). Section 550 (a) is also consistent with General Statutes § 52-552h, which sets forth the remedies for creditors and provides in pertinent part that "a creditor . . . may obtain: (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim . . . ."

It is clear from the pleadings, the evidence proffered at trial and the interrogatories, that the plaintiffs sought money judgments against the defendants to recover the money that was fraudulently transferred, and also sought the transfers of the real property to be set aside. We conclude that Coan is a creditor under § 544 (b) and can proceed on his judgment against Marshall and Emma for the benefit of the other unsecured creditors, notwithstanding the amount of the judgment, pursuant to § 550 (a). Thus, Coan can recover the value of Marshall's one-half interest in the real estate, in addition to Marshall's one-half interest in the fraudulently transferred personal property. We further conclude that CNB can proceed on its judgment against Louis and Janice to recover the fraudulently transferred assets to the extent of their judgment, i.e., $77,500. See 11 U.S.C. § 550 (a); General Statutes § 52-552 (a) (1).[11] Therefore, the trial court properly ordered damages and the reconveyance of the real and personal property.

V

Coan claims on cross appeal that the trial court improperly refused to set aside the jury verdict because

[11] The defendants, for the first time at oral argument, raised the issue of whether Coan has standing under 11 U.S.C. § 544 (b). The defendants, relying on *In re Colonial Realty Co.* v. *Marinelli*, supra, 168 B.R. 506, and *Caplin* v. *Marine Midland Grace Trust Co. of New York*, 406 U.S. 416, 92 S. Ct. 1678, 32 L. Ed. 2d 195 (1972), argue that, because Coan brought a personal action on behalf of CNB and not for the benefit of all the creditors, he lacks standing under § 544 (b). Because we conclude that Coan is entitled to recover for the benefit of the other unsecured creditors, he has standing under § 544 (b). See *Koch Refining* v. *Farmers Union Central Exchange,*

it was inconsistent with the jury interrogatories.[12] He claims that the jury incorrectly divided the amount of the judgment obtained by CNB in July, 1990, in the amount of $154,232, without regard to the joint and several liability of Louis and Marshall, and Coan's powers as the trustee, to recover assets in excess of the judgment for the benefit of the other unsecured creditors.[13]

We review the trial court's action in granting or denying a motion to set aside a verdict by an abuse of

*Inc.*, supra, 831 F.2d 511 (stating that trustee has creditor status under § 544 if he brings suit for benefit of estate and ultimately of creditors).

[12] The following interrogatories were submitted to the jury regarding Marshall and Emma, and the jury answered the interrogatories as follows:

"1. Do you find that Marshall D'Onofrio transferred, on March 1, 1990, to Emma D'Onofrio his 1/2 interest in the real estate at 391 Taulman Road, Orange, CT with the intent to hinder, delay or defraud Connecticut National Bank. Yes.

"2. Do you find that Marshall D'Onofrio transferred, on March 1, 1990, to Emma D'Onofrio his 1/2 interest in the boat slip with the intent to hinder, delay or defraud Connecticut National Bank. Yes.

"3. Do you find that Marshall D'Onofrio transferred, on February 28, 1990, to Emma D'Onofrio $83,678.54 of funds in a Society for Savings, account number 06950556537 with the intent to hinder, delay or defraud Connecticut National Bank. Yes.

"a. The interest transferred by Marshall D'Onofrio to Emma D'Onofrio was 50% of the total value of the asset.

"4. Do you find that Marshall D'Onofrio transferred, on September 30, 1991, to Emma D'Onofrio $58,583 in funds with the intent to hinder, delay or defraud Connecticut National Bank. Yes.

"a. The interest transferred by Marshall D'Onofrio to Emma D'Onofrio was 50% of the total value of the asset.

"5. Do you find that Marshall D'Onofrio transferred, on May 23, 1991, to Emma D'Onofrio $39,909.15 with the intent to hinder, delay or defraud Connecticut National Bank. Yes.

"a. The interest transferred by Marshall D'Onofrio to Emma D'Onofrio was 50% of the total value of the asset."

[13] The jury verdict form stated: "In this case, the jury finds the issues for the plaintiff, Richard Coan, Trustee, as against the defendants, Marshall D'Onofrio and Emma D'Onofrio.

"The jury therefore finds for said plaintiff, Richard Coan, trustee, to recover of the defendants, Marshall D'Onofrio and Emma D'Onofrio $77,500 damages."

discretion standard. *State* v. *Hammond*, 221 Conn. 264, 270, 604 A.2d 793 (1992). A trial court may set aside a verdict on a finding that the verdict is manifestly unjust because, given the evidence presented, the jury mistakenly applied a legal principle or because there is no evidence to which the legal principles of the case could be applied. *Maroun* v. *Tarro*, 35 Conn. App. 391, 396, 646 A.2d 251, cert. denied, 231 Conn. 926, 648 A.2d 164 (1994). "A court should be especially hesitant to set aside a jury's award of damages." *Zarrelli* v. *Barnum Festival Society, Inc.*, 6 Conn. App. 322, 326, 505 A.2d 25, cert. denied, 200 Conn. 801, 509 A.2d 516 (1986). "The assessment of damages defies any precise mathematical computation . . . and, therefore, establishing damages . . . is a task peculiarly within the expertise of a jury." (Citations omitted; internal quotation marks omitted.) *Creem* v. *Cicero*, 12 Conn. App. 607, 610, 533 A.2d 234 (1987).

During jury deliberations, the jury forwarded a note to the trial court stating: "We need to have a better understanding of the complaint (dollar amount) per defendant. We want to know what the total amount due to Connecticut National Bank per defendant is. We are confused." In response, the trial court instructed the jury to answer the interrogatories and that the court would make any reductions or changes to those figures. The trial court did not instruct the jury on the concept of joint and several liability, nor did it instruct on the powers of the trustee to collect on behalf of all unsecured creditors pursuant to § 544 (b).

In its answers to the interrogatories, the jury found that Louis fraudulently transferred $74,431.77 to Janice and that Marshall fraudulently transferred $91,748.43 to Emma. The jury also answered yes to the question of whether Louis and Marshall fraudulently conveyed their respective residences to their wives. On its verdict form, however, the jury awarded CNB $77,500 and Coan

$77,500. The trial court accepted the jury verdicts.[14] At the subsequent hearing on Coan's motion to set aside the verdict, the trial court stated that the jury interrogatories were for its benefit and declined to make any modifications to the amount of the judgment awarded to Coan.

The only issue for us to consider is whether the trial court abused its discretion in denying the plaintiffs' motion to set aside the verdict. While the verdict and the interrogatories are inconsistent, the jury could fairly have reached its conclusion. There is no evidence that the jury verdicts were manifestly unjust in light of the evidence presented or that the jury mistakenly applied a legal principle. *Maroun* v. *Tarro*, supra, 35 Conn. App. 396. Moreover, the parties did not request that the trial court charge the jury on the concept of joint and several liability or on the powers of the trustee to recover for the benefit of other unsecured creditors. As a result, we conclude that the trial court did not abuse its discretion in denying Coan's motion to set aside the verdict.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[14] The trial court did not return the jury for reconsideration pursuant to Practice Book § 311.