**In re Thomas B. BOYD, Debtor.**

**Martin W. Hoffman, Trustee, Plaintiff,**

**v.**

**Rose Marie Boyd, Defendant.**

**Bankruptcy No. 92–23604.**
**Adversary No. 94–2371.**

United States Bankruptcy Court,
D. Connecticut.

June 19, 2001.

---

Walter J. Onacewicz, Hoffman Law Offices, West Hartford, CT, for Trustee–Plaintiff.

Gilbert Shasha, New London, CT, for Defendant.

## MEMORANDUM OF DECISION

ROBERT L. KRECHEVSKY,
Bankruptcy Judge.

### I.

Thomas B. Boyd ("the debtor"), on September 14, 1992, filed a Chapter 7 petition, and Martin W. Hoffman, Esq. ("the trustee") became trustee of the debtor's estate. On October 28, 1994, the trustee filed an amended complaint against Rose Marie Boyd ("the defendant") to avoid, as fraudulent under Connecticut law, two transfers of realty which the debtor made prepetition to the defendant, his wife. The transfers complied with the provisions of a Separation Agreement executed on September 24, 1985 by the debtor and the defendant ("the Separation Agreement"). The Connecticut Superior Court, on March 13, 1986, had issued a judgment legally separating the parties and approving the Separation Agreement as fair and equitable. The debtor and the defendant late in 1986 reconciled. The significance of the reconciliation on the two transfers is the principal issue dividing the trustee and the defendant. A trial held on March 13, 2001, provided the following background.

### II.

### BACKGROUND

The debtor and the defendant (together "the Boyds") had intermarried on June 24, 1962. Their separation in 1985 resulted from the Boyds' disagreements concerning their son and clashes over their different approaches to family finances. The debtor, a builder and a computer retailer, was accustomed to taking financial risks and leveraging projects while the defendant, a school librarian, was considerably more conservative about incurring debt. She feared that the debtor's activities might jeopardize their residence on which she had made virtually all the mortgage payments. The Separation Agreement provided for a division of property. The debtor agreed to (1) transfer to the defendant his one-half ownership interest in the couple's jointly-owned residence at 37 Colonial Drive, Waterford, Connecticut ("the Colonial property"); (2) transfer to the defendant his one-half interest in property in Massachusetts; and (3) erect a house on jointly-owned property at 25 Westwood Drive, Waterford, Connecticut ("the Westwood property"), obtain a certificate of occupancy, and then convey his one-half interest in the property to the defendant who would assume the existing mortgage. The defendant retained custody of a minor child and she agreed to (1) forgo all claims against the debtor for alimony or child support; (2) transfer to the debtor her interest in property in Vermont; and (3) relinquish any claim to a share of the computer business.

The debtor, having previously moved out of the Colonial property, delivered to the defendant a quitclaim deed, executed on September 9, 1985, of his interest in the Colonial property. The defendant's attorney took possession of this deed for recording with the town clerk, but failed to do so. In 1990, the attorney's legal assistant, Jane B. Gaedt, discovered that the deed "had been inadvertently left in the office file and not forwarded to the Town Clerk for recording." (Gaedt Aff., Ex. 2.) The deed was recorded on May 14, 1990.

The debtor built the house on the Westwood property, but before he received a certificate of occupancy, the premises were

vandalized to a considerable degree. The debtor and defendant filed an insurance claim for such damage. The insurer initially denied the claim. The debtor conveyed by quitclaim deed, executed August 16, 1991 and recorded on August 20, 1991, his interest in the Westwood property to the defendant. The defendant hired an attorney to pursue the insurance claim, but was unsuccessful in resolving the claim prepetition. The defendant failed to make the Westwood property mortgage payments, a foreclosure ensued, and the mortgagee received a deficiency judgment of approximately $73,000. Postpetition, through arbitration, an award of $123,000 was obtained on the insurance claim, which sum, plus interest, the trustee is presently holding, subject to the claims of the defendant, the mortgagee and counsel handling the claim.

In the latter part of 1986, after being separated for about a year, the Boyds reconciled. Both testified that the proposed and consummated division of property under the Separation Agreement was an essential factor in their reconciliation.

## III.

### CONTENTIONS OF THE PARTIES

The trustee seeks a judgment avoiding, pursuant to Bankruptcy Code § 544(b) and Conn. Gen.Stat. § 52–552, the transfers of the Colonial and Westwood properties as

1. Conn. Gen.Stat. § 52–577 provides that "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."; *But see Connecticut National Bank v. D'Onofrio,* 46 Conn. App. 199, 207, 699 A.2d 237 (1997), *cert. denied* 243 Conn. 926, 701 A.2d 657 (1997) (holding that the four-year statute of limitations applicable to actual and constructive fraud under § 52–522j, adopted in 1991 as part of the Uniform Fraudulent Transfer Act, was retroactively applicable to actions subsequently brought pursuant to § 52–552).

fraudulent transfers. Although the Westwood property has been foreclosed, resolution of the fraudulent transfer claim determines the debtor's estate's entitlement to share in the proceeds of the insurance award.

The trustee contends that under Conn. Gen.Stat. § 52–552, the 1990 recording of the Colonial deed and the 1991 execution and recording of the Westwood deed are fraudulent transfers that occurred within the "three-year" applicable statutory period [1]; that such transfers may be avoided by the trustee pursuant to Bankruptcy Code § 544(b); that the trustee may recover (1) the value of the debtor's interest in the Westwood property insurance award and (2) the value of the debtor's interest in the Colonial property.[2]

The defendant filed an answer, special defenses and counterclaims to the complaint.[3] The defendant contends that the transfers at issue were the performance of the obligations which the debtor incurred under the Separation Agreement and not fraudulent.

## IV.

### DISCUSSION

The trustee seeks to avoid the transfers of property pursuant to Bankruptcy Code § 544(b) which, as it existed at the commencement of the debtor's bankruptcy case, provided:

2. The record is confusing on the amount of equity, if any, in the Colonial property on the date of transfer. This issue need not be addressed in light of the court's determination of other issues.

3. The defendant did not pursue the counterclaims at trial or in post-trial briefing and the court will construe the counterclaims as abandoned.

66

The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544 (1992).

■ The trustee has asserted, and the defendant does not dispute, the existence of an allowable unsecured claim that arose prior to the transfers at issue. Because the properties are located in Connecticut, Connecticut law applies. *See Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707 (2d Cir.1991) ("A fraudulent conveyance claim is governed by the law of the state in which property is located."). The Connecticut statute in effect at the time of the transfers at issue was Conn. Gen.Stat. § 52–552 (repealed in 1991 and replaced by the Uniform Fraudulent Transfers Act at § 52–552a et seq.).[4] Although § 52–552 did not define a fraudulent conveyance, Connecticut case law has established the elements of an action under that statute:

A party who seeks to set aside a conveyance as fraudulent bears the burden of proving that the conveyance was made without substantial consideration and that, as a result, the transferor was unable to meet his obligations (constructive fraud) or that the conveyance was made with fraudulent intent in which the grantee participated (actual fraud).

*Tessitore v. Tessitore*, 31 Conn.App. 40, 42, 623 A.2d 496 (1993) (citing *Tyers v. Coma*, 214 Conn. 8, 11, 570 A.2d 186 (1990)).

## A.

### Actual Fraud

■ "Whether the conveyance in question was fraudulent is purely a question of fact. Fraudulent intent must be proved, if at all, by clear, precise and unequivocal evidence. This standard of proof applies to intra-familial conveyances." *Tyers v. Coma*, 214 Conn. at 11, 570 A.2d 186 (citations and internal quotation marks omitted). "Since the question of actual fraud involves the parties' states of mind, it is not ordinarily proven by direct evidence, but rather, by inference from other facts proven—the indicia or badges of fraud. That evidence may include the circumstances of the transfer ... [and] the conduct and action of the defendants with respect to the possession, management and control of the premises after the date of the conveyance.... The fact of an intra-family conveyance itself does not raise a presumption of fraudulent intent." *Citizens Bank of Clearwater v. Hunt*, 927 F.2d at 711 (citations to Connecticut case law and internal quotation marks omitted).

■ The trustee argues that the close relationship between the debtor and the defendant and the return of the debtor to the Colonial property after the reconciliation are indicia of fraudulent intent. The court, however, credits the testimony of the debtor and the defendant on this issue. With regard to the Colonial property, neither of the Boyds was aware that the quitclaim deed executed in 1985 had not been promptly recorded on the land records. Their testimony is supported by affidavit of Ms. Gaedt that, in 1990, she

4. Conn. Gen.Stat. § 52–552 (repealed 1991) provided:
All fraudulent conveyances, suits, judgments, executions or contracts, made or contrived with intent to avoid any debt or duty belonging to others, shall, notwithstanding any pretended consideration therefor, be void as against those persons only, their heirs, executors, administrators or assigns, to whom such debt or duty belongs.

discovered the unrecorded deed had inadvertently been filed away and that it was recorded immediately thereafter.

With regard to the transfer of the Westwood property, the vandalism damage was extensive, and the insurance company disputed the claim. The debtor could not obtain a certificate of occupancy without the repairs, but needed the insurance proceeds in order to make the repairs. Unable to proceed any further, the debtor transferred the property to the defendant who pursued the insurance claim.

In light of the circumstances existing at the times of the transfers at issue, the court concludes that the trustee has failed to meet his burden of proving actual fraudulent intent of either the debtor or the defendant. The trustee cites an earlier decision by this court, *Germain v. Kaczorowski* (*In re Kaczorowski*), 87 B.R. 1 (Bankr.D.Conn.1988), in which the court found that an alleged separation was actually a sham by which the couple involved intended to defraud the husband's creditors. However, as noted, *supra*, determinations of fraudulent intent are issues of fact. As such, the credibility of the witnesses and plausibility of their explanations are often the determinative factors. The facts of the present proceeding bear little resemblance to those in *Kaczorowski*. In *Kaczorowski*, the evidence indicated, *inter alia*, that the alleged separation was in contemplation of and virtually on the eve of the husband's bankruptcy filing and that the couple never lived apart or treated the property as transferred. The *Kaczorowski* ruling is inapposite and does not give support to the trustee's position.

B.

*Constructive Fraud*

In order to prevail in an action for constructive fraud under Connecticut law, the trustee must prove by clear and convincing evidence [5] both (1) that the conveyance was made without substantial consideration and (2) that the debtor was insolvent at the time of the transfer or became insolvent as a result of it. *See, e.g., Tyers v. Coma*, 214 Conn. at 11, 570 A.2d 186. If, as the defendant argues, the transfer was in partial satisfaction of an existing obligation, the trustee cannot prevail on the first element. The trustee contends that the Separation Agreement was abrogated when the Boyds resumed marital relations, that the debtor was under no obligation to transfer the properties and that he did not receive substantial consideration for the transfer.

Connecticut case law has long held that a separation agreement dividing marital property is a contract which may be "enforced by actions brought upon the contracts themselves and the remedies are no other or different than the remedies provided by law for the breach of any other contract." *Lasprogato v. Lasprogato*, 127 Conn. 510, 514, 18 A.2d 353 (1941); *Oliver v. Oliver*, 2000 WL 1819411 (Conn.Super.2000). Whether the terms of the Separation Agreement were abrogated when the Boyds resumed marital relations depends on their intent. *Mitchell v. Mitchell*, 194 Conn. 312, 327, 481 A.2d 31 (1984) (whether the parties intended to abrogate their separation agreement when they resumed marital relations was a question of fact to be determined by the court). Conn. Gen.Stat. § 46b–65 [6] provides a mechanism whereby a separated couple

---

**5.** *See Tessitore v. Tessitore*, 31 Conn.App. at 42–43, 623 A.2d 496 ("The standard of proof of a fraudulent conveyance is the same on allegations of actual or constructive fraud. . . .

A fraudulent conveyance must be proven by clear and convincing evidence.").

**6.** Conn. Gen.Stat. § 46b–65 (1995) provides, in relevant part:

resuming marital relations may file a declaration electing to abrogate the terms of a separation agreement. The Boyds did not file such a declaration and both testified that they intended the property settlement provisions of the Separation Agreement to be effected. The defendant testified that those terms were essential to the reconciliation. As owner, the defendant had made the mortgage payments on the Colonial property, and to some extent on the Westwood property, and pursued the insurance claim on the Westwood property. The only evidence offered by the trustee to support a contention that the Boyds did not consider themselves bound by the property division contained in the Separation Agreement was a vague reference to a "home" listed as an asset on a loan application which the debtor signed in September, 1986. The remaining financial statements of the debtor which the trustee introduced as evidence include no reference to the Colonial or Westwood properties as an asset. The court is persuaded that the debtor and the defendant intended to continue to be bound after their reconciliation by the property division terms of the Separation Agreement.

The trustee further argues that the Separation Agreement was not binding because it was not supported by consideration. Since the Separation Agreement was executed more than three years prepetition, the trustee cannot avoid it as a fraudulent transfer. Accordingly, the issue is not whether the Separation Agreement was supported by the "substantial consideration" required under the case law of fraudulent conveyances, but only whether the Separation Agreement was a contract, supported by consideration, and not a gift. The court need not consider whether the values of the various rights, interests and obligations exchanged under the terms of the Separation Agreement were reasonably equivalent. In addition to providing for the transfers at issue in this proceeding, the Separation Agreement also imposed certain obligations on the defendant. The defendant was to transfer her interest in property in Vermont to the debtor, which she did; she was to assume the mortgages on the Colonial and Westwood properties; she was to have custody of the couple's minor child without seeking additional support from the debtor; and she was to relinquish any claim to the computer business. The court concludes that the Separation Agreement was supported by consideration, that the Boyds did not abrogate its terms when they resumed marital relations, and that the transfers at issue were made in satisfaction of the Separation Agreement obligations.

The court further concludes that the trustee has not satisfied his burden of proof of clear and convincing evidence on the question of the debtor's insolvency at the time of the realty transfers. The evidence included several signed statements of the debtor's assets and liabilities, including loan applications and the bankruptcy schedules, over the period from 1986 through the bankruptcy petition date. The various financial statements showed volatility in the debtor's finances, but did not indicate that the debtor was insolvent at the time of either of the transfers or

§ 46b–65. Filing of declaration of resumption of marital relations; dissolution of marriage after legal separation decree when no declaration filed
(a) If the parties to a decree of legal separation at any time resume marital relations and file their written declaration of resumption, signed, acknowledged and witnessed, with the clerk of the superior court for the judicial district in which the separation was decreed, the declaration shall be entered upon the docket, under the entries relating to the complaint, and the decree shall be vacated and the complaint shall be deemed dismissed.

became insolvent as a result of the transfers. For example, a statement of the debtor's assets and liabilities, as of February 25, 1991, shows assets of $767,500 and liabilities of $480,500.

## V.

### . CONCLUSION

The court concludes that the trustee has neither met his burden of proof with regard to the fraudulent intent required for actual fraud, nor with regard to showing either the lack of consideration or the debtor's insolvency, both of which are required for constructive fraud. Accordingly, the transfers are not avoidable and judgment shall enter for the defendant that the complaint be dismissed on the merits, plus costs.