## NEIL BARRY ET AL. *v.* QUALITY STEEL PRODUCTS, INC., ET AL.

## BERNARD COHADE ET AL. *v.* QUALITY STEEL PRODUCTS, INC., ET AL.
### (SC 17453)

Borden, Norcott, Katz, Palmer and Zarella, Js.

Argued November 23, 2005—officially released September 12, 2006

*Philip T. Newbury, Jr.*, with whom, on the brief, was *Kristan M. Maccini*, for the appellants (named defendant et al.).

*Andrew J. Maloney III*, pro hac vice, with whom was *Joel T. Faxon*, for the appellees (plaintiffs).

*Rachel M. Pattison*, for the appellee (intervening plaintiff).

### Opinion

BORDEN, J. This is the second appeal in these consolidated product liability actions. The first appeal followed a judgment rendered for the defendants, Quality Steel Products, Inc. (Quality Steel), and Qual-Craft Industries, Inc., after a jury verdict in the defendants' favor. In that appeal, we reversed the judgment in part and ordered a new trial. *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 427, 820 A.2d 258 (2003).[1]

---

[1] In *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 452, we reversed the judgment in favor of the defendants and affirmed the grant of summary judgment in favor of the intervening plaintiff, DeLuca Construction Company, on the defendants' counterclaim.

The defendants jointly appeal[2] from the judgment rendered, following a jury trial, in favor of the named plaintiffs, Neil Barry and Bernard Cohade.[3] The defendants claim that the trial court improperly: (1) refused to instruct the jury that it could apportion responsibility for the plaintiffs' injuries to their employer, DeLuca Construction Company (DeLuca), pursuant to the comparative responsibility provisions of General Statutes § 52-572o; (2) ruled that, absent agreement of counsel, it would permit no additional discovery or expert disclosures concerning any matter that could have been discovered or disclosed prior to the first trial; (3) excluded as inadmissible hearsay certain photographic evidence proffered by the defendants; (4) denied the jury's request for access during deliberations to a demonstrative exhibit relied on by the defendants during the trial; (5) excluded evidence that the plaintiffs were not wearing personal fall protection while working on the roof; and (6) awarded the plaintiffs costs for both trials. We affirm the judgment of the trial court.

The plaintiffs brought these product liability actions pursuant to General Statutes § 52-572m et seq. against the defendants, alleging that they had suffered injuries caused by the failure of an allegedly defective roof bracket manufactured by the defendants.[4] The case was tried to a jury and resulted in a defendants' verdict. The plaintiffs appealed, contending, inter alia, that the jury

[2] The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] Lynn Cohade, the former wife of Bernard Cohade, was also a plaintiff in this action, but was not awarded any damages and is not a party to this appeal. Diana Barry is a party to this appeal, but her claim for loss of consortium is derivative of the injuries of her husband, Neil Barry. For purposes of this appeal, therefore, references to the plaintiffs are to Neil Barry and Bernard Cohade.

[4] The plaintiffs also sued Ring's End, Inc., the company that sold the brackets to DeLuca shortly prior to the accident. Ring's End, Inc., is no longer a party to this action.

had been misled by the trial court's instruction on superseding cause. We agreed that the jury charge was misleading, and ordered a new trial. Id., 446. This second trial resulted in a jury verdict for the plaintiffs. The defendants now appeal from the judgment rendered for the plaintiffs in accordance with the verdict.

The jury reasonably could have found the following facts. The plaintiffs were employed as master carpenters for DeLuca. On the day of the accident, they were installing a new roof on an addition to the New Canaan Nature Center. While the plaintiffs worked on the roof, they stood on staging that was attached to the roof with brackets designed and manufactured by the defendants. Sometime in mid-morning, the plaintiffs and their supervisor, Nate Manizza, had attached the brackets to the roof with nails.[5]

Neither of the plaintiffs nor Manizza recalled noticing who had attached the defective bracket to the roof. Once the brackets were attached, the plaintiffs and Manizza began putting shingles on the roof. They broke for lunch, then returned to continue working on the roof. Soon after lunch, Manizza climbed down from the roof to make a telephone call. At that time, the staging that the plaintiffs were working on slid out from underneath them, and they fell to the ground, sustaining serious injuries. After the plaintiffs were taken away by ambulance, Gene Marini, a senior superintendent with DeLuca, examined the site and discovered a deformed bracket on the ground where the plaintiffs had landed.

In the first trial, the jury found that the defendants' roof bracket was defective, unreasonably dangerous

---

[5] Cohade, who testified that he had attached at least one of the roof brackets, stated that when he attached brackets, he always used twelve penny nails. Barry could not recall whether he had installed any brackets that day, but he also testified that if he did install any brackets, he would have used twelve penny nails to attach them. Manizza testified that he used eight penny nails to attach brackets.

and a proximate cause of the accident. Id., 429–30 n.8. The jury also found, however, that the combined conduct of the plaintiffs, Manizza and DeLuca functioned as a superseding cause, and, based on that finding, rendered a verdict in favor of the defendants.[6] Id. On appeal, this court concluded that the doctrine of superseding cause "no longer plays a useful role in our common law of proximate cause." Id., 427. We therefore abolished the doctrine in cases "wherein a defendant claims that its tortious conduct is superseded by a subsequent negligent act or there are multiple acts of negligence." Id., 439 n.16. Accordingly, we reversed the judgment of the trial court in favor of the defendants and ordered a new trial.[7] Id., 452. In this second trial, the jury found for the plaintiffs and awarded economic and noneconomic damages in the amount of $1,298,000 to Barry and $898,000 to Cohade.[8] This appeal followed.

I

The defendants first claim that the trial court improperly refused to instruct the jury that it could apportion responsibility for the plaintiffs' injuries to DeLuca pursuant to the comparative responsibility provisions of § 52-572o.[9] More specifically, the defendants claim that,

---

[6] The conduct underlying this finding was the use of allegedly improper size nails. See Barry v. Quality Steel Products, Inc., supra, 263 Conn. 429–30 n.8.

[7] We affirmed, however, the trial court's judgment granting DeLuca's motion for summary judgment on the defendants' counterclaim, which sought indemnification from DeLuca. Barry v. Quality Steel Products, Inc., supra, 263 Conn. 452. We agreed with the trial court's conclusion that the defendants' claim for indemnification was barred by the exclusive remedy provision of the Workers' Compensation Act, General Statutes § 31-284; id., 450; under which DeLuca, as the plaintiffs' employer, was immune from tort liability, and because there existed no independent legal relationship between the defendants and DeLuca that would give rise to a duty to indemnify. Id., 451.

[8] The jury also awarded $100,000 in damages to Diane Barry on her claim for loss of consortium. That award is not separately challenged in this appeal.

[9] General Statutes § 52-572o provides: "(a) In any claim under sections 52-240a, 52-240b, 52-572m to 52-572q, inclusive, or 52-577a, the comparative responsibility of, or attributed to, the claimant, shall not bar recovery but

because DeLuca is a "party" to the action, the various provisions of § 52-572o providing for apportionment of liability damages to a "party"; see General Statutes § 52-572o (b) and (d); apply to DeLuca and, therefore, the court should have instructed the jury that, if it found that DeLuca had been negligent and that DeLuca's negligence had caused, at least in part, the plaintiffs' injuries, the jury should apportion some measure of liability for the plaintiffs' injuries to DeLuca. As the basis for their claim that the jury should have been allowed to apportion some measure of liability to DeLuca, the defendants point to DeLuca's alleged negligent failure to provide fall protection for the plaintiffs while they worked on the roof. We disagree. We conclude, to the contrary,

shall diminish the award of compensatory damages proportionately, according to the measure of responsibility attributed to the claimant.

"(b) In any claim involving comparative responsibility, the court may instruct the jury to give answers to special interrogatories, or if there is no jury, the court may make its own findings, indicating (1) the amount of damages each claimant would receive if comparative responsibility were disregarded, and (2) the percentage of responsibility allocated to each party, including the claimant, as compared with the combined responsibility of all parties to the action. For this purpose, the court may decide that it is appropriate to treat two or more persons as a single party.

"(c) In determining the percentage of responsibility, the trier of fact shall consider, on a comparative basis, both the nature and quality of the conduct of the party.

"(d) The court shall determine the award for each claimant according to these findings and shall enter judgment against parties liable on the basis of the common law joint and several liability of joint tortfeasors. The judgment shall also specify the proportionate amount of damages allocated against each party liable, according to the percentage of responsibility established for such party.

"(e) If a judgment has been rendered, any action for contribution must be brought within one year after the judgment becomes final. If no judgment has been rendered, the person bringing the action for contribution either must have (1) discharged by payment the common liability within the period of the statute of limitations applicable to the right of action of the claimant against him and commenced the action for contribution within one year after payment, or (2) agreed while action was pending to discharge the common liability and, within one year after the agreement, have paid the liability and brought an action for contribution."

that the references to "party" in § 52-572o do not include an employer that has intervened in the action to seek reimbursement of workers' compensation benefits paid to the plaintiffs.

We first note that DeLuca intervened in these actions solely pursuant to General Statutes § 31-293 (a) in order to seek reimbursement for the workers' compensation payments that it was required to make to the plaintiffs. We also note that, pursuant to the exclusivity provision of the Workers' Compensation Act; General Statutes § 31-284 (a); the plaintiffs could not sue DeLuca for any of their injuries. See footnote 7 of this opinion.

The question of whether § 52-572o requires a jury to consider the proportionate liability of an employer who is subject to the exclusivity provision of § 31-284,[10] and to reduce the percentage of liability of other parties accordingly, presents a question of statutory interpretation and is therefore subject to plenary review. "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply." *School Administrators of Waterbury* v. *Waterbury Financial Planning & Assistance Board*, 276 Conn. 355, 364, 855 A.2d 1219 (2005). As always, we begin with the language of the statute.[11]

---

[10] General Statutes § 31-284 (a) provides in relevant part: "An employer who complies with the requirements of subsection (b) of this section shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment . . . but an employer shall secure compensation for his employees as provided under this chapter . . . . All rights and claims between an employer who complies with the requirements of subsection (b) of this section and employees . . . arising out of personal injury . . . are abolished other than rights and claims given by this chapter . . . ."

[11] We are mindful of the fact that General Statutes § 1-2z requires that, before we go beyond the text of a statute to determine its meaning, we first must determine that it is not plain and unambiguous. See *Bell Atlantic NYNEX Mobile, Inc.* v. *Commissioner of Revenue Services*, 273 Conn. 240, 250–51 n.13, 869 A.2d 611 (2005). The defendants' contend that the language

It is a basic tenet of statutory construction that "[w]e construe a statute as a whole and read its subsections concurrently in order to reach a reasonable overall interpretation." (Internal quotation marks omitted.) *In re Steven M.*, 264 Conn. 747, 757, 826 A.2d 156 (2003). Applying this principle to § 52-572o, which sets forth the rules governing the allocation of comparative responsibility among parties in product liability actions, leads us to conclude that the statute does not contemplate, and is inconsistent with, the apportionment of a percentage of the plaintiff's total damages to his employer who has intervened in the action to recoup the workers' compensation payments made by the employer.

The first subsection of the statute provides that, in a claim brought in a product liability action, "the comparative responsibility of, or attributed to, the claimant, shall not bar recovery but shall diminish the award of compensatory damages proportionately, according to the measure of responsibility attributed to the claimant." General Statutes § 52-572o (a). Section 52-572o accomplishes two goals. It requires the fact finder to determine the total amount of damages, irrespective of the plaintiff's fault, that is, the amount of damages the plaintiff "would receive if comparative responsibility were disregarded . . . ." General Statutes § 52-572o (b) (1). It also requires the fact finder to allocate that total amount of damages among the parties, including the plaintiff, according to their respective percentages of responsibility. General Statutes § 52-572o (b) (2). Thus, for example, a plaintiff who is 25 percent responsible for his injuries will have his total amount of proven damages discounted or reduced by 25 percent, and the remaining 75 percent of his damages will be allocated

---

of § 52-572o as applied to the facts of the present case is plain. We disagree. Therefore, we are free to turn to extratextual sources to aid us in our analysis of the statutory language.

among the liable defendants according to their respective degrees of responsibility. It is apparent, therefore, that in the application of this system of pure comparative responsibility, the more defendants among whom the responsibility for the plaintiff's net award—i.e., his total proven damages discounted by his degree of responsibility—may be allocated, the smaller the proportional share of liability that is likely to be allocated to each defendant, and, accordingly, the smaller the proportional share of the total damages that the plaintiff will be entitled to recover from each defendant.[12]

The remaining subsections set forth the procedures for accomplishment of the two part process contemplated by the statute, namely: (1) calculating the amount of the claimant's award; and (2) once the total award amount is determined, apportioning the percentage of liability among those defendants who are liable. Subsections (b) and (c) of § 52-572o are aimed at assisting the fact finder in calculating the amount of a plaintiff's award, as well as the percentage of liability of each defendant. These provisions set forth a system of pure comparative responsibility.[13] Under such a system, the

---

[12] For example, assume a total award, irrespective of comparative responsibility, of $100,000, and that the plaintiff and each of three defendants are each 25 percent liable. The plaintiff's net award would be $75,000, and each defendant would be liable for $25,000. If, however, there were five defendants rather than three, and the plaintiff was 25 percent responsible, and the remaining degree of fault was equally apportioned among the defendants, each defendant would be liable for only $15,000.

[13] That the section was intended to establish a system of pure comparative responsibility in the context of product liability actions is apparent from the discussions on the House and Senate floors when the legislation was initially passed. In discussing the purpose of the statute, Representative John A. Berman explained: "It provides for pure comparative negligence, which means that to the extent that the product user, the consumer, is at fault, that amount of fault is deducted from his recovery. So that if an individual is 10 [percent] at fault, then he would recover 90 [percent], and conversely if he were 60 [percent] at fault, he would recover 40 [percent]." 22 H.R. Proc., Pt. 20, 1979 Sess., p. 7021. Similarly, in the Senate, Senator Salvatore C. DePiano remarked that the section "introduces the concept of pure comparative negligence in products cases . . . ." 22 S. Proc., Pt. 14, 1979 Sess., p. 4637.

plaintiff's recovery is reduced by the degree to which he was at fault, and each of the liable defendants is liable only for that portion of the plaintiff's net award for which it is responsible. Thus, under such a system, a plaintiff who is 70 percent responsible would nonetheless recover 30 percent of his proven damages; and each liable defendant would be responsible for its proportional share of that 30 percent.[14]

Subsection (b) of § 52-572o sets forth a two part process. First, the fact finder must calculate the total amount of damages that "each claimant would receive if comparative responsibility were disregarded . . . ."[15] General Statutes § 52-572o (b) (1). Second, subsection (b) provides for the allocation of responsibility as between the claimant and the defendants. Specifically, in any claim involving comparative responsibility, the

---

[11] This is in contrast to the system applicable in the context of negligence claims, in which the plaintiff recovers nothing if his degree of responsibility exceeds 50 percent. See General Statutes § 52-572h (b), which provides in relevant part: "In causes of action based on negligence, contributory negligence shall not bar recovery in an action by any person or the person's legal representative to recover damages resulting from personal injury, wrongful death or damage to property *if the negligence was not greater than the combined negligence of the person or persons against whom recovery is sought* . . . ." (Emphasis added.)

[15] Additionally, we note that when, as in the present case, an employer has paid workers' compensation benefits to the claimant and has subsequently intervened pursuant to § 31-293 to recover the benefits paid to its employee, § 31-293 (a) provides in relevant part that if the claimant recovers any damages, "the damages shall be so apportioned that the claim of the employer, as defined in this section, shall take precedence over that of the injured employee in the proceeds of the recovery, after the deduction of reasonable and necessary expenditures, including attorneys' fees, incurred by the employee in effecting the recovery. The rendition of a judgment in favor of the employee or the employer against the party shall not terminate the employer's obligation to make further compensation which the commissioner thereafter deems payable to the injured employee. If the damages, after deducting the employee's expenses as provided in this subsection, are more than sufficient to reimburse the employer, damages shall be assessed in his favor in a sum sufficient to reimburse him for his claim, and the excess shall be assessed in favor of the injured employee. . . ."

court may instruct the jury to answer special interrogatories, or, if there is no jury, the court may make findings, indicating "the percentage of responsibility allocated to each party, *including the claimant,* as compared with the combined responsibility of all parties to the action." (Emphasis added.) General Statutes § 52-572o (b) (2). This provision ensures that no defendants are held liable for any portion of responsibility attributable to the plaintiff and requires the fact finder, in addition to determining whether the plaintiff bears a percentage of the total responsibility, to allocate a percentage of liability to each of the remaining "parties" in the action. Subsection (c) provides further guidance to the fact finder in quantifying the percentage of responsibility, if any, to allocate to the plaintiff and the remaining parties, providing that "[i]n determining the percentage of responsibility, the trier of fact shall consider, on a comparative basis, both the nature and quality of the conduct of the party." General Statutes § 52-527o (c).

At this point, the fact finder's task is accomplished. What remains is for the court to enter judgment in accordance with the findings made pursuant to subsections (b) and (c) of § 52-572o. Subsection (d) outlines this process. That section provides: "The court shall determine the award for each claimant according to these findings and shall enter judgment *against parties liable on the basis of the common law joint and several liability of joint tortfeasors.* The judgment shall also specify the proportionate amount of damages allocated against each party liable, according to the percentage of responsibility established for such party." (Emphasis added.) General Statutes § 52-572o (d). The first sentence of this provision requires the court to enter judgment against *each* liable defendant for the *full* amount of the plaintiff's *net recovery,* namely, the plaintiff's total proven damages discounted by his own degree

of responsibility. That consequence follows from the mandate that the court "enter judgment against parties liable *on the basis of the common law joint and several liability of joint tortfeasors.*" (Emphasis added.) General Statutes § 52-572o (d). Under a system of joint and several liability, a plaintiff has the right to recover the entire amount of damages awarded from any defendant found to have proximately caused the plaintiff's injuries, regardless of how comparatively small that defendant's degree of fault. *Donner* v. *Kearse*, 234 Conn. 660, 666–67, 662 A.2d 1269 (1995). The second sentence of § 52-572o (d) requires the court then to "specify the proportionate amount of damages allocated against each party liable, according to the percentage of responsibility established for such party." This provision requires the court to allocate the plaintiff's net award among the defendants according to their respective degree of responsibility. In effect, then, the court must enter a two part judgment against each liable defendant: (1) a judgment for the entire amount of the plaintiff's net award; and (2) an allocation of that judgment against each defendant based on each defendant's degree of responsibility.

The first sentence of subsection (e) of § 52-572o; see footnote 9 of this opinion; addresses the question of contribution among the defendants following a judgment rendered by the court pursuant to subsection (d). It provides that any action for contribution must be brought within one year of the judgment. "Contribution is a payment made by each, or by any, of several having a *common interest or liability* of his share in the loss suffered, or in the money necessarily paid by one of the parties in behalf of the others. . . . The right of action for contribution, which is equitable in origin, arises when, as between multiple parties jointly bound to pay a sum of money, one party is compelled to pay the entire sum. That party may then assert a right of

contribution against the others for their proportionate share of the *common* obligation." (Emphasis in original; internal quotation marks omitted.) *Security Ins. Co. of Hartford* v. *Lumbermens Mutual Casualty Co.*, 264 Conn. 688, 714, 826 A.2d 107 (2003).

The purposes of subsections (d) and (e) of § 52-572o are: (1) to ensure, to the extent possible, that the plaintiff is made whole by recovering the full amount of his net award, from all or any one of the defendants; and (2) to provide that if any liable defendant pays more than its proportional share of that net award, it may seek appropriate contributions from the other liable defendants. These concomitant purposes make clear that an employer who has intervened in the case to recoup workers' compensation benefits paid to a plaintiff is not a "party" against which proportional liability may be assigned under § 52-572o. To include such an employer in the general scheme of allocation of responsibility would be wholly inconsistent with the employer's immunity from suit by its employee under the Workers' Compensation Act and with the employer's limited role as intervenor to recoup the payments it is required by that act to make to its employee. Such an employer could not be liable to the plaintiff on the basis of joint and several liability as a joint tortfeasor, because of the exclusivity provision in the Workers' Compensation Act. Furthermore, to include such an employer as a "party" for purposes of apportioning liability pursuant to § 52-572o would undermine the purpose of allowing contribution among the liable parties, because, based on that same principle of exclusivity, such an employer could not be required to contribute to a third party's payment of the plaintiff's damages.[16] Put another way,

---

[16] Indeed, in *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 449–52, based on the exclusivity provision of the Workers' Compensation Act, and in the absence of any independent legal duty to the defendants, we rejected the defendants' claim that the trial court improperly granted summary judgment to DeLuca on the defendants' counterclaim seeking indemnification against DeLuca.

to consider the plaintiffs' employer as a "party" for purposes of apportioning liability among defendants under § 52-572o, as the defendants argue, would in effect either deprive the plaintiffs of the full amount of their net award or strip the employer of its bargained-for exclusivity under the Workers' Compensation Act. We decline to interpret § 52-572o to arrive at such a perverse set of consequences.

Thus, we disagree with the defendants' reliance on *Barry* for the proposition that, because DeLuca's negligence was relevant to the issue of proximate cause, the jury should have been allowed to assess DeLuca's percentage of responsibility. Specifically, the defendants rely on our statement in *Barry* that, "under the approach we adopt herein, the question to be answered by the fact finder is whether the various actors' allegedly negligent conduct was a cause in fact and a proximate cause of the plaintiff's injury in light of all the relevant circumstances. If found to be both, each actor will be liable for his or her proportionate share of the plaintiff's damages." *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 442.

The defendants fail to acknowledge, however, that we also stated in *Barry* that our conclusion was premised on a "common-law analysis of the law of proximate and superseding causes," because that was the way that the case was tried to the jury and argued on appeal the first time around. Id., 427–28 n.4. We recognized, however, that the plaintiffs' action was a product liability claim and noted that the comparative responsibility principles set forth in § 52-572o could have an effect on how the principles articulated in *Barry* were applied on the retrial. Id. In particular, we noted that § 52-572o (d) incorporates the principle of joint and several liability, and further noted that none of the possibly relevant provisions of § 52-572o had been discussed during the first trial, nor had the possible consistency

or inconsistency of the exclusivity provision of the Workers' Compensation Act with the comparative responsibility provisions of § 52-572o been considered. Id. As we have already set forth in our analysis, the statutory scheme set forth in § 52-572o is inconsistent with applying apportionment to an intervening employer. Any remarks we made in *Barry* in the context of a common-law analysis of proximate cause do not change that statutory analysis.

## II

The defendants next claim that the trial court improperly ruled that, absent agreement of counsel, it would permit no additional discovery or expert disclosures concerning any matter that could have been discovered or disclosed prior to the first trial. We reject this claim.

Specifically, prior to this second trial, the court held a hearing on the parties' motions in limine and denied the defendants' motion requesting that they be permitted to introduce evidence of additional testing performed after the first trial. In ruling on the motion, the trial court stated that it would allow such additional evidence only upon an agreement by the parties. The defendants nevertheless subsequently conducted additional testing, both drop load testing and nail size testing. At trial, the plaintiffs agreed that the court could allow testimony regarding the drop load testing in exchange for the withdrawal of the defendants' objections to evidence that the plaintiffs wished to introduce regarding the roof brackets. Defense counsel conceded, during the hearing on the defendants' motion to set aside the verdict, that it had never formally offered the nail size testing into evidence during the trial and the court had, therefore, never excluded it.

We first set forth the applicable standard of review. "We have long recognized that the granting or denial of a discovery request rests in the sound discretion of

the [trial] court, and is subject to reversal only if such an order constitutes an abuse of that discretion. . . . [I]t is only in rare instances that the trial court's decision will be disturbed. . . . Therefore, we must discern whether the court could [have] reasonably conclude[d] as it did." (Internal quotation marks omitted.) *Blumenthal* v. *Kimber Mfg., Inc.*, 265 Conn. 1, 7, 826 A.2d 1088 (2003). The defendants have pointed to nothing that would lead us to conclude that the court abused its discretion in limiting the scope of discovery and expert disclosures to matters that could not have been discovered or disclosed prior to the first trial. The court's order represented a reasonable attempt to prevent duplicative discovery requests, and allowed the parties the flexibility to determine among themselves whether to arrive at any agreements permitting an exception to the trial court's general proscription, an option that the parties did in fact exercise when they agreed that the defendants could introduce testimony regarding the additional drop load test.

We are not persuaded by the defendants' claim that, because the second trial was de novo, the trial court was obligated, in managing discovery during the second trial, to make its decisions as though the first trial had not taken place. As support for this proposition, the defendants cite to a line of cases in which we discussed the scope of a trial court's discretion to limit a retrial to a specific issue or issues. See, e.g., *Murray* v. *Krenz*, 94 Conn. 503, 507–508, 109 A. 859 (1920). That line of cases does not support the defendants' contention that, in tailoring its discovery orders on retrial, a trial court must ignore the previously conducted discovery in the first trial; indeed such a rule would be contrary to basic principles of judicial economy and efficiency, would be inconsistent with the broad discretion that a trial court has in granting and denying discovery requests, and likely would encourage duplicative and abusive discov-

ery requests by parties intent on delaying the legal process.

### III

The defendants next claim that the trial court improperly excluded as inadmissible hearsay certain photographic evidence proffered by the defendants. We disagree with the defendants that this ground represents the basis upon which the trial court excluded the photographs. Instead, we conclude that the trial court acted within its discretion in excluding the photographic evidence based on the defendants' failure to lay a proper foundation for the evidence.

During the retrial, through defense witness Robert P. Berish, the president of Quality Steel, the defendants sought to introduce two pieces of evidence: a written report produced in connection with compressive load testing that had been performed on the roof brackets manufactured by Quality Steel; and photographs that had been taken during the testing. The plaintiffs objected to the written report on hearsay grounds and to the photographic evidence based on a lack of foundation. Our examination of the trial transcripts confirms that the trial court excluded the written report on hearsay grounds, but that the plaintiffs later withdrew their objection to the written report and that it was admitted into evidence. The court excluded the photographic evidence based on lack of foundation, because Berish was not present at the time that the photographs were taken. The defendants' argument that the photographs were not inadmissible hearsay, therefore, is premised on a misinterpretation of the trial court's basis for excluding the photographic evidence.

The defendants also claim that there was an adequate foundation laid for Berish to testify regarding the photographs. In support of their contention that Berish possessed sufficient personal knowledge to authenticate

the photographs, the defendants merely make the blanket assertion that he had "firsthand knowledge of the testing done and the results thereof because it was done at his request." The mere fact that Berish was the person who had requested the tests does not render him competent to testify that the photographs were a fair and accurate representation of the conditions at the time of the testing. There was no testimony that he had been present at the time that the tests were conducted or that he had any other personal knowledge of the objects and conditions depicted in the photographs that would support the conclusion that he could testify that they were fair and accurate representations. See Conn. Code Evid. § 9-1 (a).[17] Accordingly, the trial court did not abuse its discretion in excluding the photographic evidence.

## IV

The defendants next claim that the trial court improperly denied the jury's request for access during deliberations to a demonstrative exhibit employed by the defendants during the trial. We disagree that the trial court abused its discretion in denying the jury's request.

The exhibit at issue was a model replication of the roof on which the plaintiffs were working when they fell. The court had allowed it to be used as a demonstrative exhibit during trial, but it had never been entered into evidence as a full exhibit. The trial court denied

---

[17] Section 9-1 (a) of the Connecticut Code of Evidence provides: "The requirement of authentication as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the offered evidence is what its proponent claims it to be."

The commentary to § 9-1 (a) further provides that, with regard to photographic evidence, "[a] witness with personal knowledge may testify that the offered evidence is what its proponent claims it to be." See also *State* v. *Swinton*, 268 Conn. 781, 802, 847 A.2d 921 (2004) (standard for admitting photographic evidence is to do so "through a witness competent to verify it as a fair and accurate representation of what it depicts").

the jury's request precisely because the model had never been admitted as a formal exhibit. Specifically, during the colloquy with the court regarding the jury's request, the defendants withdrew their request to have the model marked as a court exhibit, but claimed that the jury should be allowed access to the model even if it remained a demonstrative exhibit only.

As has been aptly noted by our Appellate Court, the trial court has broad discretion in determining whether to admit or exclude demonstrative evidence. *Tripp* v. *Anderson*, 1 Conn. App. 433, 435, 472 A.2d 804 (1984). Furthermore, the trial court in the present case was within its discretion to deny jury access to a model that had not been admitted into evidence.

We disagree with the defendants that the jury's request was akin to a request to review the scene of the accident. Because the model never was offered as an exhibit, the defendants never established that it was substantially similar to the scene at the time of the accident. We are also not persuaded by the defendants' claim that the model was constructively introduced into evidence because the defendants did not formally offer the model, which was quite large and heavy, into evidence as an accommodation to the court. The defendants cite to no authority for the proposition that an item may be constructively introduced into evidence.

V

The defendants next claim that the trial court abused its discretion in excluding evidence, which the defendants claimed was relevant to the plaintiffs' comparative responsibility under § 52-572o, that the plaintiffs were not wearing personal fall protection while working on the roof. We disagree.

As we have noted previously in part I of this opinion, § 52-572o incorporates the idea of pure comparative

responsibility into our product liability law. We have explained this notion previously, summarizing the effect of a system of pure comparative responsibility as follows: "[A] partial recovery is allowed even if the claimant's injury is attributable mostly to his or her conduct." *Elliot* v. *Sears, Roebuck & Co.*, 229 Conn. 500, 512, 642 A.2d 709 (1994). Subsection (a) of § 52-572o makes this clear by providing that "the comparative responsibility of, or attributed to, the claimant, shall not bar recovery but shall diminish the award of compensatory damages proportionately, according to the measure of responsibility attributed to the claimant." As for guidance in determining what type of conduct justifies a finding of comparative responsibility on the part of a plaintiff, subsection (c) of § 52-572o provides that the fact finder shall consider "both the nature and quality of the conduct of [each] party." Other than that, the statute does not limit the type of conduct that may be considered in determining a plaintiff's measure of comparative responsibility.

We have enunciated the general principle that the question the fact finder must answer in determining whether a plaintiff bears a measure of comparative responsibility for his or her damages is "whether [the plaintiff] failed to exercise that degree of care for his own safety that a reasonable person would have exercised . . . and as a result, contributed to the injuries which he sustained . . . ." (Internal quotation marks omitted.) *Champagne* v. *Raybestos-Manhattan, Inc.*, 212 Conn. 509, 543, 562 A.2d 1100 (1989) (quoting, with approval, from trial court's jury instructions). Thus, the inquiry we engage in to determine a plaintiff's comparative responsibility is the same inquiry we employ to determine a defendant's negligence. See also Restatement (Third), Torts, Apportionment of Liability § 3, p. 29 (2000) ("[p]laintiff's negligence is defined by the applicable standard for a defendant's negligence").

In other words, we must examine duty, breach, causation and injury. The first question, therefore, is whether the plaintiffs had a duty to provide fall protection for themselves. The answer to this question resolves the analysis because, for two reasons, we cannot conclude that the plaintiffs had such a duty. First, as the plaintiffs point out, the imposition of such a duty would require the plaintiffs to have anticipated the possibility that the roof brackets would fail and require them to use back-up systems to guard against possible defects in the brackets. The imposition of a duty to engage in this type of second-guessing goes beyond the ordinary standard of reasonableness. Second, it is ordinarily the province of the employer to set the working conditions, including determining what measures are necessary to secure the safety of its workers. The defendants, by contending that the plaintiffs had an individual duty to obtain and wear personal fall protection while working on the roof, suggest that the plaintiffs had a duty either to supplement the safety procedures set by their employer and purchase such fall protection for themselves or that they had a duty to ensure that their employer did so for them. The imposition of such a duty upon the plaintiffs would go well beyond the standard of reasonableness.

The case cited to by the defendants in support of their argument that the plaintiffs' failure to wear fall protection was relevant to the fact finder's determination of the plaintiffs' measure of comparative responsibility, namely, *Champagne* v. *Raybestos-Manhattan, Inc.*, supra, 212 Conn. 509, is distinguishable. In that case, the plaintiff administratrix of the estate of the deceased sought damages for, inter alia, personal injuries suffered by the deceased as a result of exposure to asbestos products manufactured by the defendant. Id., 511. On appeal, we rejected the plaintiff's claim that the trial court improperly accepted the part of the jury

verdict that reduced the plaintiff's recovery by 75 percent because of the decedent's comparative responsibility. Id., 538–40. There was considerable evidence during the trial of the decedent's smoking history, which, we noted, the jury apparently took into account in determining the measure of the decedent's comparative responsibility. Id., 540. We reasoned that the decedent's smoking was relevant to the jury's determination of whether the decedent had "failed to exercise that degree of care for his own safety as a reasonable person would have exercised under the circumstances." Id., 550.

The defendants claim that our decision in *Champagne* controls the present case. We have already concluded, however, that the plaintiffs' failure to wear fall protection was not relevant to a determination of whether they took reasonable precautions for their own safety. Additionally, the failure to anticipate the defective nature of a product and take appropriate preemptive action is hardly the same as voluntarily and knowingly subjecting oneself to a separate risk factor that has been scientifically linked to the very harm for which one is suing. Our holding in *Champagne*, thus, is inapposite.

## VI

Finally, the defendants claim that the trial court improperly awarded the plaintiffs costs for both trials. We disagree.

Following the second trial, the plaintiffs submitted, pursuant to General Statutes § 52-257 (fees of parties in civil actions), General Statutes § 52-258 (jury fees), General Statutes § 52-259 (court fees), General Statutes § 52-260 (witness fees) and General Statutes § 52-261 (fees and expenses of officers and persons serving process or performing other duties), a bill of costs for a total of $14,056.01, including fees and costs from both

the first and second trials. In their objection to the plaintiffs' bill of costs, the defendants objected to any costs and fees incurred during the course of the first trial. The court sustained some of the defendants' objections, but as to the defendants' objections to the imposition of fees and costs for the first trial, the court concluded that the plaintiffs were entitled to recover costs for both trials because "the plaintiffs [bore] no responsibility for the fact that this case had to be tried twice, and, in fact, the defendants requested the instruction that led to the reversal of the first trial . . . ." (Citation omitted.)

"It is elementary that, whether fees and costs are a matter of right or discretion, they ordinarily are awarded to the party that prevails in the case and, until there is a prevailing party, they do not arise. *Danbury* v. *Dana Investment Corp.*, 249 Conn. 1, 18, 730 A.2d 1128 (1999); see also General Statutes § 52-257 (providing that prevailing party receives certain sums in civil actions)." (Internal quotation marks omitted.) *Frillici* v. *Westport*, 264 Conn. 266, 284, 823 A.2d 1172 (2003). It is within the discretion of the trial court to award fees and costs to the prevailing party.

The defendants do not dispute that the plaintiffs are the prevailing party, but argue that, because the plaintiffs were not the prevailing party until the retrial, the plaintiffs are entitled only to the costs and fees associated with the retrial. In this regard, we are persuaded by the colloquial wisdom of Yogi Berra, who is reported to have said, albeit in a different context, "It ain't over till it's over."[18]

The plaintiffs were, ultimately, the prevailing party; the mere fact that the defendants prevailed on the first trial, without more, does not render the trial court's

---

[18] J. Bartlett & J. Kaplan, Bartlett's Familiar Quotations (16th Ed. 1992), p. 754 (commenting on 1973 National League pennant race).

award of costs for both trials an abuse of discretion. Nor are we persuaded by the defendants' characterization of the trial court's award of costs for both trials as based somehow on "blaming" and penalizing the defendants for the "error" of the first trial. The simple truth is that in *Barry*, this court clarified the law by abolishing the doctrine of superseding cause in certain contexts. The reversal was not the fault of either the defendants or the plaintiffs, nor, for that matter, of the trial court, which merely followed existing precedent at the time. None of that changes the fact that, when all was over, the plaintiffs were the prevailing party and, therefore, the trial court properly exercised its discretion in awarding costs for both trials.

The judgment is affirmed.

In this opinion the other justices concurred.