******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

J. WILLIAM GAGNE, JR. *v.* ENRICO VACCARO
(AC 32247)
(AC 32830)

Gruendel, Prescott and Borden, Js.

*Argued October 29, 2014—officially released January 13, 2015*

(Appeal from Superior Court, judicial district of New Haven, Hon Anthony V. DeMayo, judge trial referee.)

*Matthew J. Corcoran*, for the appellant (defendant).

*Peter A. Ventre*, for the appellee (plaintiff).

*Opinion*

GRUENDEL, J. This consolidated appeal comes to us on remand from our Supreme Court. In *Gagne* v. *Vaccaro*, 133 Conn. App. 431, 439, 35 A.3d 380 (2012), this court held that the trial court improperly failed to recuse itself from hearing the motion for appellate attorney's fees, discovery objections, and motion for contempt filed by the plaintiff, J. William Gagne, Jr. Our Supreme Court reversed that decision, concluding that the recusal issue was moot and, therefore, not properly before this court. *Gagne* v. *Vaccaro*, 311 Conn. 649, 660, 90 A.3d 196 (2014). The court remanded the case to us with direction to dismiss the appeal as to that issue and to consider the remaining claims advanced by the defendant, Enrico Vaccaro. Id., 662. Consistent with that mandate, we now consider whether the trial court (1) abused its discretion in entering certain discovery orders, (2) lacked authority to impose interest or taxable costs on its award of attorney's fees, and (3) improperly held the defendant in contempt. We affirm in part and reverse in part the judgments of the trial court.

As the Supreme Court aptly observed, "[t]he present action is the culmination of a disagreement between two attorneys that has lasted decades." Id., 651. The facts relevant to this appeal largely were set forth in our earlier decision. "In 2005, the plaintiff commenced the underlying action seeking foreclosure of a judgment lien held against property owned by the defendant. . . . [T]he defendant filed an answer, special defenses and a counterclaim. The plaintiff filed a motion for summary judgment as to liability only, which the court granted. . . . [T]he defendant appealed from the summary judgment, but the appeal was dismissed both for lack of a final judgment and because the defendant's appeal as to his counterclaim was frivolous. Our Supreme Court denied the defendant's petition for certification to appeal. . . .

"On May 31, 2006, the plaintiff filed a motion for appellate attorney's fees incurred in connection with the first appeal. On July 14, 2006, the plaintiff filed a preemptive motion to terminate any appellate stay that might arise if the defendant filed another appeal, arguing that any appeal would be without merit and merely for purposes of delay. . . . [T]he court granted the motion to terminate a stay, rendered a judgment of strict foreclosure on the plaintiff's judgment lien, and awarded the plaintiff attorney's fees for the defendant's first appeal and for the foreclosure. . . . [T]he defendant filed a motion to reargue and for reconsideration, which the court denied . . . . The defendant filed a second appeal on August 30, 2006, from the judgment of strict foreclosure. On April 29, 2008, this court affirmed the trial court's judgment. . . .

"On May 28, 2008, the plaintiff filed a motion for

appellate attorney's fees incurred in responding to the defendant's second appeal. . . . [T]he defendant filed a motion to dismiss the plaintiff's motion for attorney's fees or, in the alternative, an objection to the motion for attorney's fees. On September 3, 2008, the court . . . granted the plaintiff's motion for appellate attorney's fees incurred in the defendant's second appeal. . . . [T]he defendant filed a motion to reargue and for reconsideration of the award of attorney's fees, which the court denied. The defendant filed his third appeal in this matter on October 10, 2008, from the trial court's award of attorney's fees. On December 8, 2009, this court affirmed in part and reversed in part the trial court's September 3, 2008 judgment awarding the plaintiff appellate attorney's fees. . . . This court held that the trial court had the authority, pursuant to General Statutes § 52-249, to award appellate attorney's fees but that the court should have held an evidentiary hearing as to the reasonableness of the fees. . . . This court thus reversed the judgment in part and remanded the matter as to the award of attorney's fees, with direction to conduct a hearing as to the reasonableness of the plaintiffs requested fees. . . .

"The present appeal concerns the matters which occurred following this court's remand to the trial court in December, 2009. Following [that] remand, the plaintiff filed a motion for appellate attorney's fees incurred in responding to the defendant's third appeal and a motion for an order that the hearing ordered by this court would occur at the same time as the hearing on his most recent motion for attorney's fees. The defendant filed objections to the plaintiff's motions for appellate attorney's fees in connection with the second and third appeals. In addition, the defendant filed a deposition notice and a subpoena seeking the production of numerous documents from the plaintiff's attorney. On March 9, 2010, the court granted the plaintiff's motions for a protective order and to quash the subpoena, and the court overruled the defendant's objection thereto." (Citations omitted; footnote omitted.) *Gagne* v. *Vaccaro*, supra, 133 Conn. App. 433–35.

The court held a hearing on the plaintiff's motions for appellate attorney's fees on March 23, 2010, and thereafter awarded the plaintiff $16,980 in attorney's fees for the defendant's second appeal and $9860 for the third appeal. In its memorandum of decision, the court further ordered that "legal interest of 10 percent on any unpaid portion of the fee awarded for the second appeal shall commence thirty days from the date of this decision," and that "legal interest of 10 percent on any unpaid portion of the fee awarded for the third appeal shall commence sixty days from the date of this decision." In addition, the court credited the plaintiff's representation that "the defendant has not yet paid costs taxed against him in prior proceedings, though the parties agreed on the amount to be paid. The sum of $522.60

is ordered to be paid forthwith."[1] As a final matter, the court awarded the plaintiff "taxable costs which shall be paid within twenty days of this decision." From that judgment, the defendant commenced a fourth appeal before this court under docket number AC 32247.

On May 21, 2010, the plaintiff filed a motion, pursuant to Practice Book § 61-11, to terminate the automatic appellate stay of execution. Following a hearing, the court granted that motion on June 17, 2010, concluding that "the appeal is frivolous and taken to delay further this fifteen year old vendetta." As part of its judgment, the court entered the following supplemental orders: "(1) The defendant is to adhere to the order and schedule of payments in the amounts due; (2) All such payments shall be made to the clerk of the Superior Court at New Haven where they shall be deposited in the court's account, in escrow; (3) Payments shall be bank or personal check and be accompanied by some indication it is for deposit regarding this case; (4) No withdrawals shall be permitted without a further order of the court."

On August 19, 2010, the plaintiff filed what he termed a "motion for order and/or for contempt." He alleged in relevant part that "[t]o date the defendant has failed, neglected and refused to deposit the funds . . . as ordered by the court. Such was confirmed by the court on August 18, 2010. The plaintiff seeks that the defendant be ordered to immediately deposit the funds with the court as ordered. Further, in addition or in the alternative, the plaintiff seeks that the defendant be held in contempt, that he immediately deposit the funds with the court as ordered, that he pay the plaintiff's additional attorney's fees [for] motion and the court enter further orders as it deems appropriate. The plaintiff seeks $500 in attorney's fees."

On September 7, 2010, the defendant deposited $26,873.39 into the court's escrow account, in accordance with the court's supplemental orders of June 17, 2010.

The court rendered judgment on the plaintiff's motion for contempt on September 9, 2010. Its order stated in full: "The plaintiff has filed a 'Motion for Order and/or For Contempt' in which he seeks to have the court order the defendant to comply with its order of June 17, 2010. That order is in effect, the Appellate Court having denied the defendant's request to stay it or otherwise nullify it on July 28, 2010. It appearing that any further order of this court will also be ignored by the defendant, and no response to the Appellate Court action having been filed, the court finds the defendant to be in contempt of its June 17 order. The sanctions to be imposed for contempt will be addressed on September 28, 2010, at 10 a.m. in this court in a courtroom to be assigned by the caseflow clerk. An award of counsel fees for the plaintiff's motion and this proceeding

will be considered."

Approximately one week later, the defendant filed a motion for reconsideration requesting that the court "vacate its order dated September 9, 2010, for the reason that the defendant deposited the funds in issue with the clerk of the court prior to the entry of the order, as evidence by the receipt attached hereto." The plaintiff filed an objection to that motion, arguing both that the defendant's belated payment of $26,873.39 did not include $749.77 in interest and that, irrespective of any payment, the defendant already had been found to be in contempt.

The court held a hearing on the issue of sanctions on September 28, 2010. It thereafter denied the defendant's motion for reconsideration and awarded the plaintiff $850 in attorney's fees. The court also ordered that (1) the defendant "deposit the alleged shortage" in the court's escrow account "or file an affidavit with a computation indicating there is no shortage," and (2) "the defendant is to appear personally at any court procedure involving this case and scheduled for hearing, argument or other action." The defendant appealed from that judgment to this court under docket number AC 32830, which was consolidated with docket number AC 32247.

I

The defendant claims that the court abused its discretion in entering certain discovery orders with respect to the plaintiff's motions for appellate attorney's fees. We do not agree.

It is well established that "the granting or denial of a discovery request rests in the sound discretion of the [trial] court, and is subject to reversal only if such an order constitutes an abuse of that discretion." (Internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, 280 Conn. 1, 16–17, 905 A.2d 55 (2006); see also *Olson* v. *Accessory Controls & Equipment Corp.*, 254 Conn. 145, 176–77, 757 A.2d 14 (2000) ("[d]ecisions regarding discovery are best left to the trial court in its reasoned discretion"); *Lougee* v. *Grinnell*, 216 Conn. 483, 491, 582 A.2d 456 (1990) (ruling on motion to quash deposition subpoena reviewed for abuse of discretion), overruled in part on other grounds by *State* v. *Salmon*, 250 Conn. 147, 154–55, 735 A.2d 333 (1999) (en banc); *Pryor* v. *Pryor*, 140 Conn. App. 64, 68, 57 A.3d 846 (2013) (ruling on motion for protective order reviewed for abuse of discretion). "Under the abuse of discretion standard, [a reviewing court] must make every reasonable presumption in favor of the trial court's action." (Internal quotation marks omitted.) *Woodbury Knoll, LLC* v. *Shipman & Goodwin, LLP*, 305 Conn. 750, 775, 48 A.3d 16 (2012).

The following additional facts are relevant to the defendant's claim. After the plaintiff filed motions

requesting appellate attorney's fees, the defendant served a subpoena duces tecum, accompanied by a sweeping notice of deposition,[2] on the plaintiff's attorney, Peter A. Ventre.[3] The plaintiff immediately filed an objection thereto, arguing that the defendant's subpoena and notice of deposition (1) were procedurally improper, (2) sought information privileged from disclosure, (3) were "overly broad, vague, unduly burdensome and oppressive, meant only to harass and/or embarrass the plaintiff and his counsel," and (4) were unnecessary. The plaintiff's objection further argued that Ventre already had "submitted sworn affidavits of attorney's fees with the motions for attorney's fees which . . . set forth in detail an itemized statement providing a breakdown of hours expended including an itemization and description of the time billed, the hourly rate and who performed the work. The defendant is and has been in possession of these affidavits for some period of time."[4] For those same reasons, the plaintiff also filed a motion to quash and a motion for a protective order in tandem with his objection to the defendant's notice of deposition and subpoena. On March 9, 2010, the court sustained the plaintiff's objection and granted the motions to quash and for a protective order against the defendant.

On March 23, 2010, the court held an evidentiary hearing on the plaintiff's motions for appellate attorney's fees, at which the plaintiff's two affidavits of attorney's fees were admitted into evidence. Ventre testified as a witness and was subject to cross-examination by the defendant. At that hearing, the defendant did not present any documentary or testimonial evidence whatsoever.

In its written memorandum of decision awarding the plaintiff appellate attorney's fees, the court concluded that the fees requested were reasonable. In particular, the court found that Ventre's rate of $200 per hour was "reasonable and [he] actually could easily demand a higher rate in this era of $300 and higher rates per hour." The court also emphasized the tortured history of this litigation, stating that "the defendant is prone to repeating prior claims. The plaintiff cannot be expected to do a less than thorough job in view of the case history and the defendant's penchant for appellate review."

On appeal, the defendant argues that the court abused its discretion in denying him discovery, consistent with the requests set forth in his subpoena and notice of deposition. His claim is belied by the fact that, months prior to his requests, the plaintiff provided him with extremely detailed affidavits of attorney's fees that specified the date and nature of the work performed, as well as the amount of time dedicated thereto. Those affidavits address several of the requests set forth in the defendant's February 8, 2010 notice of deposition.

See footnote 2 of this opinion.

In addition, the record plainly indicates that a full evidentiary hearing was held on the issue of appellate attorney's fees. The defendant questioned Ventre at length during that proceeding, subjecting his testimony as to the reasonableness of his attorney's fees to the crucible of cross-examination. As our Supreme Court has held, the opportunity "to question under oath a billing attorney who has submitted an affidavit in support of the requested fees" is "the most fair and efficient means of challenging those fees, that is, questioning under oath the very person on whom the court relies in assessing the fees, the billing attorney."[5] *Commission on Human Rights & Opportunities* v. *Sullivan*, 285 Conn. 208, 239, 939 A.2d 541 (2008). In considering the necessity and reasonableness of the defendant's discovery requests, the court no doubt was cognizant that the defendant would have the opportunity to question Ventre under oath, particularly when the case recently had been reversed in part by this court and remanded due to a prior failure to allow the defendant to cross-examine him "as to the fees claimed." See *Gagne* v. *Vaccaro*, 118 Conn. App. 367, 373, 984 A.2d 1084 (2009).

We further are mindful of the procedural posture of this case. At the time that the court confronted the issue of discovery with respect to appellate attorney's fees in 2010, this dispute between the parties had been bitterly litigated for well over a decade. Following a trial, the plaintiff secured a judgment against the defendant in the amount of $328,469.14, which our Supreme Court ultimately ratified in 2001. See *Gagne* v. *Vaccaro*, 255 Conn. 390, 392, 766 A.2d 416 (2001). As the trial court specifically found in ruling on the motions for appellate attorney's fees, the defendant thereafter engaged in "extensive litigation . . . including the appellate process, created in part by an apparent refusal to accept any decision as final and binding on him." That context cannot be excised from the content of the defendant's discovery attempts, particularly when the defendant's notice of deposition sought, inter alia, "[a]ll retainer and fee agreements between the law firm of Hunt Liebert Jacobson P.C. or any predecessor law firm and clients retained by it to prosecute foreclosure actions for the years 2000 through present" and "[a]ll checks, receipts, writings, accounts receivable records, ledgers or other documentation pertaining to payments received with respect to [such] foreclosure action . . . ."

Given the tortured history of this case, the court reasonably could conclude that the discovery sought by the defendant was unwarranted. See *Berger* v. *Cuomo*, 230 Conn. 1, 6–7, 644 A.2d 333 (1994) ("[d]iscovery is confined to facts material to the . . . cause of action and does not afford an open invitation to delve

into the [opposing party's] affairs"); *Pottetti* v. *Clifford*, 146 Conn. 252, 263, 150 A.2d 207 (1959) (party seeking discovery "should not be allowed to indulge a hope that a thorough ransacking of any information and material which the defendant may possess would turn up evidence helpful to [its] case"). In *Katz* v. *Richman*, 114 Conn. 165, 171, 158 A. 219 (1932), our Supreme Court addressed the propriety of a request to "inspect the books" of a corporation associated with the defendants. In concluding that the trial court did not abuse its discretion in denying that discovery request, the Supreme Court reasoned that "[t]wo things in the present instance justified the court in exercising its discretion to deny the motion: first, it amounted to a mere fishing expedition on the part of the plaintiff . . . and second, and more important, to permit the inspection of the books as claimed by the plaintiff at the trial would almost inevitably have led to a prolongation of it, if not a postponement, with great inconvenience and expense to the parties concerned. Such a practice would in many instances be inconvenient, dilatory and expensive, with nothing to justify it, leading to postponements to allow time for inspection and calculated to . . . defeat the due administration of justice." (Citation omitted; internal quotation marks omitted.) Id. The same could be said in the present case in light of the history of this litigation and the sweeping nature of the defendant's discovery requests. Indulging every reasonable presumption in favor of the correctness of the court's ruling, we cannot say that the court abused its discretion in sustaining the plaintiff's objection and granting his motions to quash and for a protective order against the defendant.

## II

The defendant next contends that the court lacked authority to impose interest on its award of attorney's fees or taxable costs associated therewith. The record reveals, and the defendant does not dispute, that he did not raise any such objection before the trial court, rendering those issues unpreserved.[6]

"It is fundamental that claims of error must be distinctly raised and decided in the trial court." *State* v. *Faison*, 112 Conn. App. 373, 379, 962 A.2d 860, cert. denied, 291 Conn. 903, 967 A.2d 507 (2009). Our rules of practice require a party, as a prerequisite to appellate review, to distinctly raise such claims before the trial court. See Practice Book § 5-2 ("[a]ny party intending to raise any question of law which may be the subject of an appeal must . . . state the question distinctly to the judicial authority"); see also Practice Book § 60-5 ("[t]he court shall not be bound to consider a claim unless it was distinctly raised at trial or arose subsequent to trial"); accord *Remillard* v. *Remillard*, 297 Conn. 345, 351, 999 A.2d 713 (2010) (raised distinctly means party must bring to attention of trial court pre-

cise matter on which decision is being asked). As our Supreme Court has explained, "[t]he reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Internal quotation marks omitted.) *Travelers Casualty & Surety Co. of America* v. *Netherlands Ins. Co.*, 312 Conn. 714, 761–62, 95 A.3d 1031 (2014). For that reason, Connecticut appellate courts generally "will not address issues not decided by the trial court." *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 52, 717 A.2d 77 (1998); see also *Crest Pontiac Cadillac, Inc.* v. *Hadley*, 239 Conn. 437, 444 n.10, 685 A.2d 670 (1996) (claims "neither addressed nor decided" by trial court are not properly before appellate tribunal). Because the defendant never presented to the trial court the claims that he now pursues on appeal, we decline to afford them review.

### III

The defendant's final claim is that the court improperly found him in contempt without first conducting an evidentiary hearing. We agree.

"Due process of law requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation. . . . Because the inability of [a party] to obey an order of the court, without fault on his part, is a good defense to a charge of contempt . . . [he has] the right to demonstrate that his failure to comply with the order of the trial court was excusable. When the conduct underlying the alleged contempt does not occur in the presence of the court, a contempt finding must be established by sufficient proof that is premised upon competent evidence presented to the trial court in accordance with the rules of procedure as in ordinary cases." (Citations omitted; internal quotation marks omitted.) *Bryant* v. *Bryant*, 228 Conn. 630, 637, 637 A.2d 1111 (1994); see also *Mekrut* v. *Suits*, 147 Conn. App. 794, 804, 84 A.3d 466 (2014) (court's refusal to hold evidentiary hearing prior to finding defendant in contempt "was a violation of the defendant's due process guarantees"). "Whether [a party] was deprived of his due process rights is a question of law, to which we grant plenary review." (Internal quotation marks omitted.) *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 489, 500, 970 A.2d 570 (2009) (indirect contempt hearing).

It is undisputed that the court did not conduct an evidentiary hearing in the present case prior to finding the defendant in contempt. Rather, the court relied

exclusively on the motion of the plaintiff, which alleged in relevant part that "[t]o date the defendant has failed, neglected and refused to deposit funds . . . as ordered by the court." "A finding of indirect civil contempt must be established by 'sufficient proof' that is premised on competent evidence presented to the trial court and based on sworn testimony." *Bunche* v. *Bunche*, 36 Conn. App. 322, 324, 650 A.2d 917 (1994). "A judgment of contempt cannot be based on representations of counsel in a motion, but must be supported by evidence produced in court at a proper proceeding." *Gattoni* v. *Zaccaro*, 52 Conn. App. 274, 284, 727 A.2d 706 (1999). As was the case in *Edmond* v. *Foisey*, 111 Conn. App. 760, 772, 961 A.2d 441 (2008), no sworn testimony was presented to the court, and "[t]he sole basis for the finding of contempt appears to have been the representations of the plaintiff's counsel." Because disputed issues of fact existed—namely, whether the defendant's alleged failure to comply with the court's order was excusable and whether the defendant had complied with that order in light of his September 7, 2010 deposit of $26,873.39 into the court's escrow account—it was incumbent upon the court to convene an evidentiary hearing, consistent with the requirements of due process, at which it was required to consider the specific claims raised by the defendant as to why he should not be held in contempt.[7] We therefore conclude that the court's finding of contempt was improper.[8]

The appeal is dismissed as to the recusal issue. The judgment in AC 32830 is reversed and the case is remanded for an evidentiary hearing on the plaintiff's August 19, 2010 motion for contempt. The judgment in AC 32247 is affirmed in all other respects.

In this opinion the other judges concurred.

[1] It is undisputed that the defendant furnished payment to the plaintiff in the amount of $522.60 on April 23, 2010.

[2] The defendant's February 8, 2010 notice of deposition stated in relevant part: "[The plaintiff's attorney] is . . . requested to produce at said deposition the following documents and materials:

"1. His curriculum vitae;

"2. All retainer and fee agreements pertaining to the above captioned matter;

"3. All invoices for services rendered in the above captioned matter;

"4. Any and all contemporaneous time records pertaining to the above captioned matter;

"5. All checks, receipts, writings, accounts receivable records, ledgers or other documentation pertaining to payments received for services rendered in the above captioned matter;

"6. Any and all writings, correspondence, notes, documents, records, or other materials corresponding to each entry in all contemporary time records pertaining to the above captioned matter;

"7. Any and all writings, notes, documents, records, emails, to or from the plaintiff pertaining to attorney's fees for services rendered in the above captioned matter;

"8. Any satisfactions of judgment in the above captioned matter;

"9. All writings, correspondence, or emails sent to or received from anyone pertaining to any satisfactions of judgment in the above captioned matter;

"10. All writings, documents, payroll records, W-2, 1099, or other writings pertaining to the method of determining and the amount of compensation received by [the plaintiff's attorney] from Hunt Liebert Jacobson P.C. or any predecessor law firm during the years 2000 through present;

"11. All retainer and fee agreements between the law firm of Hunt Liebert Jacobson P.C. or any predecessor law firm and clients retained by it to prosecute foreclosure actions for the years 2000 through present;

"12. All checks, receipts, writings, accounts receivable records, ledgers or other documentation pertaining to payments received with respect to each foreclosure action referenced in production request 10;

"13. All retainer and fee agreements between the law firm of Hunt Liebert Jacobson P.C. and clients retained by it to prosecute and/or defend any appeal from the granting of a judgment of strict foreclosure during the years 2000 through present;

"14. All invoices for services rendered in prosecuting and/or defending each appeal from the granting of a judgment of strict foreclosure referenced in production request 12;

"15. Any and all contemporaneous time records pertaining to prosecuting and/or defending each appeal from the granting of a judgment of strict foreclosure referenced in production request 12;

"16. All checks, receipts, writings, accounts receivable records, ledgers or other documentation pertaining to payments received with respect to each appeal referenced in response to production request 12;

"17. All documents pertaining to any complaints or actions against Hunt Liebert Jacobson P.C. and/or [the plaintiff's attorney] for billing and/or business and/or legal practices alleged to violate any statute, rule, or ethical standard."

[3] In subsequent pleadings, Ventre averred that he was served with that subpoena less than twenty four hours prior to the stated time for said deposition. The defendant thereafter did not dispute that representation in any manner, nor did he furnish any documentation indicating when such service transpired.

[4] The plaintiff furnished his affidavit of attorney's fees with respect to the second appeal on May 28, 2008, and his affidavit of attorney's fees with respect to the third appeal on December 22, 2009.

[5] At oral argument before this court, the defendant's counsel expressly conceded that whatever questions he may have asked during a deposition of Ventre "could have been asked during cross-examination" at the evidentiary hearing on the reasonableness of the claimed attorney's fees.

[6] Indeed, in the July 2, 2010 motion for review he filed with this court seeking vacatur of the trial court's termination of the appellate stay, the defendant averred that "[t]he plaintiff will not be prejudiced by the automatic stay because he will recover 10 percent interest should the appeal be unsuccessful."

[7] At the September 28, 2010 sanctions hearing, the defendant's counsel argued in relevant part: "Your Honor, if there was no specific date set to pay this money and he . . . paid the money and did so before you entered your contempt [finding], where is the contempt? Where is the wilful . . . violation of a court order, if the court order doesn't specify when it was due?"

[8] In this appeal, the defendant also claims that the court lacked authority to require the defendant to appear personally at all future court proceedings. Because that order was issued as a sanction for its finding of contempt, which is hereby reversed, we do not consider that claim.